REVISED AUGUST 26, 2002

UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 01-50117
_____

HAROLD MERRITT HITT,

Plaintiff-Counter-Defendant-Appellee,

versus

JERRY CONNELL, ETC.; ET AL.,

Defendants,

JERRY CONNELL, Bexar County Constable, Precinct 2,
Individually and in His Official Capacity,

Defendant-Counter-Claimant-Appellant.

_____

No. 01-51010
_____

HAROLD MERRITT HITT,

Plaintiff-Appellee,

versus

JERRY CONNELL, ETC.; ET AL.,

Defendants,

JERRY CONNELL, Bexar County Constable, Precinct 2,
Individually and in his official capacity,

Defendant-Appellant.

Appeals from the United States District Court
for the Western District of Texas

July 31, 2002

Before JONES, EMILIO M. GARZA, and STEWART, Circuit Judges.

EDITH H. JONES, Circuit Judge:

In this 42 U.S.C. § 1983 action, the jury found that Bexar County, Texas, Constable Jerry Connell fired deputy constable Harold Merritt Hitt in retaliation for Hitt's exercise of his First Amendment right to freedom of association. The jury awarded Hitt $300,000 in compensatory damages, three-fourths of which was for non-pecuniary harms like "mental and emotional distress". The district court subsequently awarded Hitt approximately $88,500 in attorney's fees and costs pursuant to 42 U.S.C. § 1988. Connell has appealed both the judgment and the award of attorney's fees.

We hold principally that the Bexar County Civil Service Commission's decision upholding Hitt's termination did not break the causal connection between the protected activity and the adverse employment action, and Connell was not entitled to qualified immunity. However, Hitt introduced insufficient evidence to support an award of nonpecuniary damages, so that a portion of

2

his damages must be vacated and the attorney's fee award remanded for reconsideration.

## I.  BACKGROUND

Harold Merritt Hitt was employed as a deputy constable in precinct 2 of Bexar County from 1993 until March 1997, when he was fired by Constable Connell.  Hitt alleged, and a jury found, that his employment was terminated because Connell disapproved of Hitt's involvement with two affiliated labor unions, the Alamo Area Peace Officers' Association and the Texas Conference of Police and Sheriffs ("TCOPS").

The dispute between Connell and Hitt began in October 1995 when Connell ordered his deputies to start reporting to the office 15 minutes before their shifts were scheduled to begin. Deputy Hitt, who was serving as the secretary of the local union, wrote to TCOPS for advice about getting paid for these extra 15 minutes.  Connell learned of Hitt's letter and called a general meeting of his deputies, one of whom surreptitiously tape-recorded what was said.  Connell reiterated that his deputies would not be paid for the 15 minutes before their shifts, but his main point was that salary grievances should not be aired outside the constable's office.  Connell suggested that deputies who continued to complain to the union were in danger of losing their commissions.

Three deputies -- Ray Mullins, Joe Algueseva, and Robert Whitney -- testified at trial that Constable Connell spoke to each

3

of them privately not long after this meeting and told them that he would not tolerate union activity in his office. Each deputy testified that Connell referred specifically to Hitt and said that he intended to fire Hitt because he was a "troublemaker." One of the deputies, Ray Mullins, served as president of the local union. Mullins tape-recorded a conversation in which Connell said several times that they would have a "running gun battle" if Mullins did not quit the union. Connell threatened to "play dirty" and said he would start by taking away Mullins's $500 monthly car allowance. During this recorded conversation, Connell observed in passing that he could fire Hitt with impunity.[1]

Connell fired Hitt in March 1997. Connell testified that he harbored no ill will toward the deputies who were active in the union. Moreover, Connell insisted that Hitt would have lost his job regardless of his union activity because Hitt had made a "bomb threat" in a January 1997 telephone conversation with his immediate supervisor, Deputy Robert North.

The gist of the telephone conversation is not in dispute. Hitt was angry that North had assigned a first-year constable to patrol traffic in a certain neighborhood. In his account of the

---

[1] Mullins nevertheless remained active in the union, and Connell fired him in early 1996. Mullins appealed the decision, the Bexar County Civil Service Commission ordered that Mullins be reinstated, and he was assigned to a new precinct.

conversation, which was written approximately three weeks after the telephone conversation, Deputy North wrote:

> Sgt. Hitt stated, was I trying to get him (Sgt. Hitt) in trouble or fired. Sgt. Hitt stated, he knew what was going on and that I (Sgt. North) was fixing to be in the war. . . .
>
> Sgt. Hitt stated, that when the bomb went off with Horn (Asst. Chief Horn) that it might get my (Sgt. North) legs also.
>
> As Sgt. Hitt and myself (Sgt. North) are both Vietnam veterans, it could have meant that the bomb, when it went off, would take out Asst. Chief Horn, and possibly my (Sgt. North) legs, as we both had seen in Vietnam.
>
> This statement could have only meant to be taken figuratively. But I don't know this for sure. Sgt. Hitt's tone of voice was filled with a lot of anger.

Hitt concedes that Deputy North's account of the conversation is generally accurate. Hitt argues, however, that violent figures of speech were used regularly around the office (e.g., Connell's "running gun battle") and that "the war" and "the bomb" referred to an ongoing criminal investigation of the constable's department.

Sergeant Gerardo De Los Santos of the Texas Rangers testified at trial that he had been investigating the constable's office since Deputy Mullins had contacted him in December 1995. At the time of the telephone conversation between Hitt and North, Sergeant De Los Santos was completing his investigation and had decided that there was sufficient evidence of retaliation and discrimination to file a report with the Bexar County District Attorney's Office. (He interviewed and took statements from Hitt

5

in January and February of 1997, and then filed his report in late February.)

Deputy North admitted at trial that he had never really believed that Hitt was making a legitimate bomb threat. Consequently, North waited three weeks before informing Constable Connell and Chief Deputy Chuck Horn of the conversation, and one reason why he submitted the report was that he had been ordered "to look for things to write Hitt up about." Then, after North submitted the memorandum quoted above, Chief Deputy Horn instructed North to revise his memo and omit any suggestion that Hitt's reference to a "bomb" should be taken figuratively.

In February 1997, Constable Connell delivered a proposed notice of termination to Hitt. Citing the telephone conversation between Hitt and North, Connell wrote that such "unprofessionalism . . . cannot and will not be tolerated." On March 5, Connell informed Hitt that his employment was terminated. Hitt appealed his dismissal to the Bexar County Civil Service Commission, but the commissioners who heard the appeal voted to uphold Constable Connell's decision.

Hitt filed this 42 U.S.C. § 1983 action in February 1999. Before trial, the district court dismissed all claims except for Hitt's free speech and free association claims against Connell in his individual capacity. Then, at the close of evidence, the district court granted judgment as a matter of law for Connell on

6

the free speech claim.  The jury returned a verdict for Hitt on the First Amendment association claim and awarded him $300,000 in compensatory damages.

The district court entered judgment for Hitt and, pursuant to 42 U.S.C. § 1988, awarded Hitt $88,487.94 in attorney's fees and expenses.  Connell's appeals of both awards have been consolidated.

## II. DISCUSSION

The First Amendment protects a public employee's right to associate with a union.  As this court has stated,

> This right of association encompasses the right of public employees to join unions and the right of their unions to engage in advocacy and to petition government in their behalf.  Thus, the first amendment is violated by state action whose purpose is either to intimidate public employees from joining a union or from taking an active part in its affairs or to retaliate against those who do.

Boddie v. City of Columbus, Miss., 989 F.2d 745, 749 (5th Cir. 1993), quoting Professional Ass'n of College Educators v. El Paso County Community College Dist., 730 F.2d 258, 262 (5th Cir. 1984) (citations omitted).

To prevail on his First Amendment retaliation claim, Hitt had to show that (1) he suffered an adverse employment action, (2) his interest in "associating" outweighed the constable's interest in efficiency, and (3) his protected activity was a substantial or motivating factor in the adverse employment action.  Breaux v. City

7

of Garland, 205 F.3d 150, 156, 157 n.12 (5th Cir. 2000); Boddie, 989 F.2d at 747. Connell's principal arguments on the merits focus on the third element of causation. He contends that Hitt's participation in union activity was not a motivating factor in his discharge because the county civil service commissioners (who had no retaliatory animus) actually made the decision or, alternatively, Connell fired Hitt because of the bomb threat. The jury concluded, however, that Constable Connell made the decision to fire Hitt and that he did so in retaliation for Hitt's protected activity. Their verdict may be overturned only if, "after viewing the trial record in the light most favorable to the verdict, there is no legally sufficient evidentiary basis for a reasonable jury to have found for the prevailing party." Mato v. Baldauf, 267 F.3d 444, 450-51 (5th Cir. 2001)(quotations and citations omitted).

A. Statute of Limitations

Connell's contention that this suit was time-barred is easily rejected. While Texas's two-year statute of limitations applied to Hitt's constitutional injury claims, Piotrowski v. City of Houston, 237 F.3d 567, 576 (5th Cir. 2001), the date a § 1983 claim accrues is governed by federal, not state law. The limitations period begins to run when the plaintiff "becomes aware that he has suffered an injury or has sufficient information to know that he has been injured." Helton v. Clements, 832 F.2d 332, 335 (5th Cir. 1987).

8

Connell tries to argue that Hitt's retaliation claim accrued at some time before his March 1997 termination, either when Hitt "felt his job was threatened" at the October 1995 office meeting; or when Hitt acknowledged in a December 1995 memo that he was afraid he was going to be fired; or when Hitt received a proposed notice of termination on February 14, 1997. If the cause of action accrued on any of these dates, then Hitt's lawsuit -- filed on February 16, 1999 -- would not be timely.

But neither the perception of a threat to one's job, nor fear of being fired, nor even the proposed notice of firing constitutes an actionable *injury*. In this context, the injury is unlawful retaliation resulting in an "adverse employment action," such as a discharge, demotion, or formal reprimand. See Breaux, 205 F.3d at 157-58. Hitt was injured, and his cause of action accrued, when his employment was terminated on March 5, 1997. The lawsuit was timely.[2]

B. The Civil Service Commission

---

[2] Connell's argument rests on a misreading of the Supreme Court's decision in Delaware State College v. Ricks, 449 U.S. 250, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980). In Ricks, the plaintiff alleged that the college unlawfully discriminated against him when it denied him tenure. After denying him tenure, however, the college offered Ricks a "terminal" employment contract; both parties understood that Ricks had to leave at the end of the year. The Supreme Court held that the statute of limitations began to run when the college reached a final decision denying tenure, rather than when Ricks's employment ultimately ceased. The result hinged on the fact that Ricks complained about a single adverse employment action: the denial of tenure. As the Court clearly explained, "If Ricks intended to complain of a discriminatory discharge, he should have identified the alleged discriminatory acts that continued until, or occurred at the time of, the actual termination of his employment. But the complaint alleges no such facts." Ricks, 449 U.S. at 255-58, 101 S.Ct. at 503-04.

The second (and most difficult) question in this case is the legal effect of the Bexar County Civil Service Commission's decision upholding the termination of Hitt's employment. Connell recognized the importance of this fact, but he vacillated between characterizing the commission, on one hand, as a quasi-judicial body whose findings of fact were entitled to preclusive effect in this § 1983 action; and, on the other, as an executive board, which has the final decision-making power with respect to all personnel matters in Bexar County.

In his motion for summary judgment, Connell urged the court to give issue or claim preclusive effect to the commission's finding that Hitt made a credible bomb threat that warranted dismissal. As Connell pointed out, the Supreme Court has "long favored application of the common-law doctrines of collateral estoppel (as to issues) and res judicata (as to claims) to those determinations of administrative bodies that have attained finality." Astoria Fed. Sav. & Loan Ass'n. v. Solimino, 501 U.S. 104, 107, 111 S.Ct. 2166, 2169 (1991). Further, federal courts must ordinarily give a state agency's decision "the same preclusive effect to which it would be entitled in the state's courts." Univ. of Tennessee v. Elliott, 478 U.S. 788, 799, 106 S.Ct. 3220, 3226 (1986). This court has implied, however, that federal rules of claim preclusion may apply to determine whether § 1983 claims are barred from litigation in federal court by the outcome of prior

10

unreviewed state administrative adjudications.  Frazier v. King,

873 F.2d 820, 823-25 (5th Cir. 1989).[3]  The magistrate judge found,

in a ruling adopted by the district court, that the civil service

commission's decision was entitled neither to claim nor issue

preclusive effect on Hitt's subsequent § 1983 action.   Whether

those conclusions were correct or not is of no moment, since

Connell has not appealed them.

Instead, the argument Connell ultimately adopted at trial

and now pursues on appeal is that the Bexar County Civil Service

Commission -- rather than Constable Connell -- is the final

decision-maker with respect to employment decisions in the

constables' offices.  It is beyond dispute that the commissioners

conducted an independent inquiry into Hitt's discharge and were not

motivated by any improper motive.  Consequently, if the commission

is the final decision-maker, then the causal connection between

---

[3]      Frazier opined, over a dissent and before Astoria was decided, that
federal preclusion law, if applicable, would not prevent a plaintiff's filing a
§ 1983 claim following state administrative proceedings.   873 F.2d at 824-25.
But the court specifically declined to decide whether federal or state claim
preclusion applied.  Since Frazier and Astoria, the circuits, curiously in light
of Astoria's unequivocal statement, have split over whether to follow state claim
preclusion principles in regard to § 1983 claims that are filed in federal court
after unreviewed state administrative proceedings.  Compare Miller v. County of
Santa Cruz, 39 F.3d 1030, 1037-38 and n.7 (9th Cir. 1994) (state claim preclusion
rules generally apply), with Edmundson v. Borough of Kennett Square, 4 F.3d 186
(3d Cir. 1993) (no preclusion for non-attorney state administrative tribunals),
and Dionne v. Mayor and City Council of Baltimore, 40 F.3d 677, 682-84 (3d Cir.
1994) (federal claim preclusion governs).
          To her credit, the magistrate judge applied a state law claim
preclusion rule.  The applicability of the state law of issue preclusion, also
applied, is not in doubt.  See Univ. of Tennessee v. Elliott, supra; United
States v. State of Texas, 158 F.3d 209, 304 (5th Cir. 1998).

11

Hitt's constitutionally protected activity and the adverse employment action is broken, and Connell may not be held liable. See Mato v. Baldauf, 267 F.3d 444, 450 (5th Cir. 2001); Long v. Eastfield College, 88 F.3d 300, 307 (5th Cir. 1996).

In most "causal connection" cases, the determinative question is whether the discriminatory or retaliatory motive of a subordinate employee may be imputed to the titular decision-maker. Id. A decision-maker may serve as the conduit of the subordinate's improper motive, for example, if he merely "rubber-stamps" the recommendation of a subordinate. This case, however, poses the logically antecedent question how to identify the official decision-maker.

The official or formal decision-maker may often be identified by a rule, e.g., an employee handbook or a company organizational chart. For public entity employers, it is appropriate to look to the statutory authority of the official or board that is alleged to have made the decision. Unlike a Texas school board, for example,[4] a county civil service commission does not have express statutory responsibility to act as the final decision-maker with respect to individual employment decisions. The relevant statute requires only that each civil service

---

[4]    See TEX. EDUC. CODE § 21.211 (authorizing school boards to "terminate a term contract and discharge a teacher at any time for . . . good cause as determined by the board").

12

commission "adopt, publish, and enforce rules" regarding the selection of county employees; promotions, seniority, and tenure; layoffs and dismissals; disciplinary actions; grievance procedures; and similar matters. TEX. LOCAL GOVT. CODE § 158.009(a). But the statute imposes no superintending responsibility over individual employment decisions. While it is conceivable that a commission could promulgate a rule that no employment decision becomes final until approved by the commission, no such rule is present here.

Under its governing rules, the commission is authorized to review and approve, reverse or modify an adverse employment decision if an employee elects to appeal it. But the mere authority to review an employment decision is not decisive. The commission became involved as an adjudicative tribunal after Hitt chose to appeal his notice of termination. Its task was to review Constable Connell's decision for conformity with applicable law and regulations, not to initiate Connell's action or generally superintend Connell's employment practices.

In light of these procedures, Connell's reliance on the Eleventh Circuit's decision in <u>Stimpson v. City of Tuscaloosa</u>, 186 F.3d 1328 (11th Cir. 1999), is misplaced. In that Title VII retaliation case, Stimpson, a police officer, alleged that the City of Tuscaloosa was motivated unlawfully when it fired her. The Eleventh Circuit emphasized three times in its brief opinion that Alabama law unequivocally deprives the city of power to discharge

13

a police officer and that the authority to terminate employment rests solely with a statutorily-created civil service board. Id. at 1330, 1331, 1332. Stimpson thus held that the City of Tuscaloosa could not be liable for retaliation because the civil service board was, as a matter of law, the actual decision-maker, and there was no evidence that the board was a mere conduit for the city's supposed discriminatory motive.

Just as clearly, the Bexar County Civil Service Commission did not assume final decisionmaking authority. The commission did not *finalize* a decision that Constable Connell had merely recommended or proposed. Although the commission did conduct its own review of Hitt's termination, it did so in a quasi-judicial capacity.

C. Qualified Immunity and *Mt. Healthy*

In the third issue raised on appeal, Constable Connell seeks to avail himself of the principle that a public employer may escape liability by proving that it would have taken the same adverse employment action "even in the absence of the protected conduct." Gerhart v. Hayes, 217 F.3d 320, 321 (5th Cir. 2000)(citing Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977)). Connell contends that he is entitled to qualified immunity because an objectively reasonable officer would have believed that he could

lawfully terminate Hitt's employment -- notwithstanding Hitt's involvement with the union -- because of the bomb threat against Deputy North and Chief Deputy Horn. <u>Cf.</u> <u>Gonzales v. Dallas County, Texas</u>, 249 F.3d 406, 412 (5th Cir. 2001).

Connell fails to apprehend the significance of the jury finding that he fired Hitt because of Hitt's union membership and not because of the bomb threat. The jury was instructed on Connell's <u>Mt. Healthy</u> defense: In order to find a violation of Hitt's rights, they had to decide, *inter alia*,

> whether the defendant has shown by a preponderance of the evidence that the action he took against the plaintiff was for other reasons, regardless of whether or not the plaintiff exercised his protected association activity. If you find that the defendant would have taken the same action against the plaintiff for reasons apart from the association activity, then your verdict should be for the defendant.

The jury verdict rejects Connell's explanation of the employment decision. Their factual finding is supported in the record. <u>See</u> <u>Boddie v. City of Columbus, Miss.</u>, 989 F.2d 745, 748 (5th Cir. 1993). No reasonable officer could have concluded that firing Hitt because of his union affiliation was legally permissible. *Id.* Further, because the jury discredited Connell's explanation, the basis for his qualified immunity contention was vitiated.[5]

---

[5] The jury verdict distinguishes this case from <u>Gonzales v. Dallas County</u>, 249 F.3d 406 (5th Cir. 2001), in which summary judgment was granted to a constable who fired one of his deputies at least in part because of the deputy's undisputed use of excessive force. Here, the jury had to determine, whether the disputed bomb threat was a credible threat and an actual motivating

15

D.   Evidentiary Rulings

Connell contends that the district court committed reversible error in admitting into evidence (1) testimony regarding disciplinary actions that Connell took against Mullins and other deputies and (2) the audiotape recordings of several meetings and conversations involving Connell.  We review the district court's decision to admit this evidence for an abuse of discretion.  United States v. Vega, 22 F.3d 789, 803 (5th Cir. 2000).

Other deputies, including Ray Mullins, were allowed to testify that they were discharged or otherwise discriminated against because of their participation in the union.  Connell contends that admitting this evidence violated Federal Rules of Evidence 404 and 403, inasmuch as the other deputies' testimony was used "to show that Connell's actions with other employees supposedly proves [sic] his conduct in Hitt's case is improper"; and, even assuming this testimony was admissible, the danger of unfair prejudice outweighed its probative value.  This testimony was admissible, however, as proof of Connell's motive in firing Hitt.  FED. R. EVID. 404(b).  Moreover, the testimony was admissible to impeach Connell's statements on multiple occasions that he was "a union man" and that he had no animus against TCOPS or any other

---

factor in Hitt's firing, and they found against Connell.

16

police union.  The district court did not abuse its discretion in admitting this evidence.

Connell's second argument is that the district court erred in admitting two audiotapes (as well as transcripts of those tapes) that were not properly authenticated.  We disagree.  Both deputies who recorded Connell's statements testified about how they made the recordings, and Connell does not dispute their identification of his voice on the tapes.  Connell has not produced sufficient evidence to cast doubt on the reliability of the tapes or the transcripts prepared from them.

E.  Compensatory Damages

Connell challenges the jury's award of $300,000 in compensatory damages as excessive because Hitt presented little or no evidence of his nonpecuniary damages.  We agree.

The verdict form did not separate pecuniary and non-pecuniary damages.  However, during his closing argument, Hitt's attorney argued that lost earnings, both past and future, amounted to $76,000.  Hitt's attorney then explained the jury question on damages:

> Interrogatory Number 3 is the money issue. . .  I think you start there with the basic lost income of [$]76,000, and then whatever you ladies feel the loss of retirement, loss of job satisfaction, worry about no job, embarrassment within the law enforcement field.  What's all that worth in addition to the [$]76,000?  I'll leave that to you.  But it should be a reasonably large sum of money.

17

Based on this representation to the jury, there is no plausible alternative but that the jury awarded Hitt $224,000 in non-pecuniary damages for mental anguish, loss of job satisfaction and prestige, and embarrassment.

The question, therefore, is whether Hitt's evidence of non-pecuniary damages is legally sufficient to warrant an award of $224,000. Our review of non-pecuniary damages is for abuse of discretion. Migis v. Pearle Vision, Inc., 135 F.3d 1041, 1046 (5th Cir. 1998).

This court has articulated in detail the kind of evidence needed to support compensatory damages for mental anguish or emotional distress. See, e.g., Vadie v. Mississippi State Univ., 218 F.3d 365, 376 (5th Cir. 2000); Brady v. Fort Bend County, 145 F.3d 691, 718-20 (5th Cir. 1998); Patterson v. P.H.P. Healthcare Corp., 90 F.3d 927, 940 (5th Cir. 1996). The same principles would logically apply to other nonpecuniary types of damages such as those urged by Hitt. For starters, we have emphasized that "hurt feelings, anger and frustration are part of life," and are not the types of emotional harm that could support an award of damages. Patterson, 90 F.3d at 940. The plaintiff must instead present *specific* evidence of emotional damage: "[T]here must be a 'specific discernable injury to the claimant's emotional state,' proven with evidence regarding the 'nature and extent' of the harm." Brady, 145 F.3d at 718 (quoting Patterson, 90 F.3d at 938, 940). To meet

18

this burden, a plaintiff is not absolutely required to submit corroborating testimony (from a spouse or family member, for example) or medical or psychological evidence. <u>Brady</u>, 145 F.3d at 718, 720. The plaintiff's own testimony, standing alone, may be sufficient to prove mental damages but only if the testimony is "particularized and extensive" enough to meet the specificity requirement discussed above: "'Neither conclusory statements that the plaintiff suffered emotional distress nor the mere fact that a constitutional violation occurred supports an award of compensatory damages.'" <u>Brady</u>, 145 F.3f at 720, 718 (quoting <u>Price v. City of Charlotte</u>, 93 F.3d 1241, 1254 (4th Cir. 1996)).

Hitt did not satisfy these standards. The record is devoid of any corroborating evidence with respect to Hitt's emotional distress or other elements of nonpecuniary damage. There is no medical evidence, no testimony from family members or co-workers, no evidence of physical manifestations of distress. In sum, all the evidence that the jury heard was Hitt's testimony that his discharge

> was emotionally trying. I was depressed. I was out of work. I was embarrassed because it never should have happened. And it made me very defensive in terms of applying for jobs and having to go through and explain, if it got to that point what had gone on and why I was out looking for work.
>
> I've been around law enforcement in Bexar County for a number of years. And people ask you, hey, what's going on. You know, how come you got fired. It's kind of a

19

blight on your reputation, and it does affect you emotionally.

At that point, Hitt's attorney turned to the question of lost income. Aside from a few other scattered statements, the quoted testimony is all the evidence of mental anguish that Hitt presented.

Our conclusion in Brady applies equally well to this case: The plaintiff's testimony is "vague, conclusory, and uncorroborated . . . . [and] cannot legally support mental anguish damages." Brady, 145 F.3d at 720. The district court thus abused its discretion in entering judgment for Hitt in the amount of $300,000. The evidence presented at trial supports the $76,000 in damages for lost income but not the remaining $224,000 in non-pecuniary damages.

F. Attorney's fees

In a consolidated appeal, Connell challenges the district court's decision to award attorney's fees and expenses in the amount of $88,487.94 to Hitt's attorney. See 42 U.S.C. § 1988. Appellate review of this award would have been hampered in any event by appellant's apparent failure to include the district court decision in the appellate record. But because we have substantially reduced the judgment, it is prudent to remand the fee award for reconsideration. We express no opinion on the award.

20

### III. CONCLUSION

In Cause No. 01-50117, we AFFIRM the judgment of liability, but VACATE the award of damages and REMAND with Instructions to enter judgment for $76,000. In Cause No. 01-51010, the district court's judgment awarding attorney's fees is VACATED and REMANDED for reconsideration in light of this opinion.

**AFFIRMED** in part, **VACATED** in part, and **REMANDED.**

CARL E. STEWART, Circuit Judge, concurring in part and dissenting in part.

I concur with the majority's resolution of the liability issues and the affirmance of Hitt's $76,000 lost wages award in cause No. 01-50117. I also agree that the jury's mental anguish award of $224,000 is excessive because Hitt's evidence on this claim was minimal. However, I do not believe that the solution is to zero out the award completely. See Vadie v. Mississippi, 218 F.3d 365, 375-79 (5th Cir. 2000) (finding an award of $300,000 in mental anguish damages under Title VII was excessive where the only evidence supporting a finding of emotional injury was the plaintiff's own testimony, and concluding that because the evidence presented supported an award no greater than $10,000, either remittitur or a new trial was required).

I respectfully dissent from the majority view that Hitt failed to present sufficient evidence to support some award for mental anguish. In Oden v. Oktibbeha County, Mississippi, we determined that there was sufficient evidence to support a jury award of $20,000 in compensatory damages for mental anguish when the only evidence submitted by Deputy Sheriff Oden was his own testimony that as a result of the defendants' discrimination, he experienced stress, sleeplessness, betrayal, and shame. 246 F.3d 458, 470-71 (5th Cir. 2001); See also Migis v. Pearle Vision, Inc., 135 F.3d 1041, 1046 (5th Cir. 1998) (concluding that the evidence, which consisted solely of Migis' testimony, was sufficiently detailed to preclude this court from holding that the district court abused its discretion in awarding $5,000 in compensatory damages for mental anguish); Williams v. Trader Publ'g Co., 218 F.3d 481 (5th Cir. 2000) (upholding an award of $100,000 in compensatory damages for emotional distress, premised solely on Williams' testimony regarding her "severe emotional distress," "sleep

22

loss," "severe loss of weight," and "beginning smoking"); <u>Forsyth v. City of Dallas, Tex.</u>, 91 F.3d 769, 775 (5th Cir. 1996) (upholding an emotional distress award of $100,000 that was premised on the plaintiff's testimony describing "depression, weight loss, intestinal troubles, and marital problems").

In the instant case, Deputy Constable Hitt testified that his termination

was emotionally trying. I was depressed. I was out of work. I was embarrassed because it never should have happened. And it made me very defensive in terms of applying for jobs and having to go through and explain, if it got to that point what had gone on and why I was out looking for work. I've been around law enforcement in Bexar County for a number of years. And people ask you, hey, what's going on. You know, how come you got fired. It's kind of a blight on your reputation, and it does affect you emotionally.

Hitt's claim for some compensation is supported by this court's holdings in <u>Forsyth</u>, <u>Migis</u>, <u>Oden</u>, <u>Vadie</u>, and <u>Williams</u>. In these cases, as in the instant case, there was no corroborating evidence, only the testimony of the plaintiffs. In addition, Hitt's testimony is arguably comparable to that of Deputy Sheriff Oden, who recovered a $20,000 award from a jury based solely on his testimony.

Along the spectrum of awards that have previously been upheld by this court, it is debatable what specific amount of mental anguish damages Hitt is entitled to. However, it is clear that he is entitled to an award that is greater than zero. Thus, for the foregoing reasons, I would vacate the jury's mental anguish award of $224,000 and either remit the award down to $20,000, or remand to the district court for a new trial on damages. In cause No. 01-51010, I concur in the remand of the attorney's fees award for reconsideration in light of the overall reduction of the jury award.

23