# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 13-30931

United States Court of Appeals
Fifth Circuit

**FILED**

August 29, 2014

Lyle W. Cayce
Clerk

COREY LAWSON and STANLEY HALL,

Plaintiffs–Appellants,

v.

CITY OF MONROE and CHARLES WESTROM,

Defendants–Appellees.

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 3:12-CV-2233

Before STEWART, Chief Judge, DENNIS and ELROD, Circuit Judges.

PER CURIAM:*

This case arises out of the terminations of two City of Monroe Sewer Department employees, Corey Lawson and Stanley Hall ("Plaintiffs"). Plaintiffs contend that they were terminated in reprisal for their union activities and in violation of the "just cause" provision of the collective bargaining agreement ("CBA"). The City of Monroe and Charles Westrom ("Defendants") assert that the terminations were not the result of anti-union animus, but that Plaintiffs were terminated because they violated work rules

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 13-30931

and policies numerous times. The district court granted summary judgment in favor of Defendants. We AFFIRM.

I.

Lawson and Hall began working at the City of Monroe Sewer Department ("City") in 1999 and 1998, respectively. In 2007, they became members and elected officers of the Local 2388 of the American Federation of State, Country, and Municipal Employees ("AFSCME"). That same year, Westrom became the City's Sewer Manager. In this position, Westrom had supervisory authority over Sewer Department employees, including over Plaintiffs. Specifically, he was hired to help manage the Sewer Department more effectively and efficiently because the City was concerned about the exorbitant costs of overtime. The City also sought Westrom's help in enforcing the Employee Handbook Work Rules.

Plaintiffs assert that they were good employees and never received warnings before Westrom became their manager. Several months after Westrom was hired, Plaintiffs began receiving disciplinary write-ups for violating Employee Handbook Work Rules. Lawson received a total of five warnings and Hall received a total of eight warnings. Plaintiffs allege that Westrom gave them these warnings because he did not like that they were members of the union.

Lawson received his first corrective action in 2008, when he was verbally warned for disrupting the Sewer Department's workflow and adversely affecting employee morale by encouraging employees to disregard management directives. In early 2009, Lawson was given a verbal warning for failing to call thirty minutes prior to missing regularly scheduled work, in violation of the Handbook. This warning stated that "Lawson admitted the problem and said that he will not do it anymore." Later that week, Lawson received a written warning for remaining on Sewer Department property after

his shift ended. The warning noted that there is an official policy that "[a]ll employees have previously been made aware of . . . and there has been a memo posted." In August 2009, Lawson was again verbally warned for not providing thirty minutes advance notice of being absent from work, in violation of the Handbook. His next warning came about two years later, in May 2011, when he received a written warning for not cleaning sewer lines when he was instructed to do so. The warning explained that "[f]ailure to heed this warning may result in disciplinary action including discharge."

Hall was also given numerous warnings for violations of Handbook Rules. In March 2009, Hall was given a warning for insubordination after he refused a work order. The warning stated that "Hall demonstrated an uncooperative attitude" and that he was being written up "for being disobedient and because of his insubordinate attitude." In June 2009, Hall was issued a written warning when he failed to appear for a temporary shift change. In August 2009, Hall received two written warnings. The first was issued after Westrom had given Hall permission to attend a union meeting while on duty, conditioned upon Hall's immediate response to any pager notice of a sewer call. Hall did not respond to a pager notice for over two and a half hours. The warning explained that Hall "acted irresponsibly toward his job by providing untimely service to the citizens of Monroe" and "[d]amages to property and health could have resulted from his actions." The second warning was issued after Hall was absent from work for four hours without clocking out. The warning stated that the "Sewer Department has a policy requiring all employees to clock out any time they leave the yard of the job. This is being explained again to Mr. Hall."

Hall received a number of other warnings. In September 2010, Hall was given a written warning for being late for work on two occasions and he was given a written warning for leaving the job site without his supervisor's

approval.  In May 2011, Hall received another written warning for failure to clean sewer lines as instructed.  The warning stated that "[f]ailure to heed this warning may result in disciplinary action including discharge."

In July 2011, Westrom discovered that two employees' work orders did not coincide with their vehicle GPS tracking system, one of the employees being Lawson.  After more investigation, Westrom learned that several employees were leaving the work site during the work shift in their personal cars without clocking out.  These employees included Plaintiffs and two non-union employees.

On the basis of this violation, Westrom issued Plaintiffs warnings on August 22, 2011, and set a pre-disciplinary hearing for the next day.  Westrom charged Hall with violating Rule 17 – Leaving the Work Area during the work shift without permission; Rule 18 – Failure to punch out when leaving the work area for personal reasons during the work day; Rule 19 – Failure to follow City job instructions; and Rule 27 – Falsifying City Records.  This warning also listed the seven previous warnings Hall had received, noting that "[o]n multiple occasions Stanley Hall left his work area in his personal vehicle.  Mr. Hall failed to punch out when leaving his work area as required by Sewer Dept. policy. . . ."  The warning explained that Hall's action "left [the City] without sewer stoppage coverage for periods of time."  Westrom charged Lawson with violating Rule 19 – Failure to follow City job instructions; Rule 26 – Insubordination; and Rule 27 – Falsifying City Records.  The warning specified that "Lawson did not do his assigned job and falsified paperwork showing that he had done the work."

Following the pre-disciplinary hearings for Plaintiffs, the City discharged Lawson and Hall for violating the City Employee Handbook Work Rules cited in their respective Employee Warning Records.  Westrom also conducted pre-disciplinary hearings for the two non-union employees.

No. 13-30931

Westrom recommended the City of Monroe discharge both of the non-union employees "on the same date and for the same reasons the City discharged Mr. Lawson and Mr. Hall . . . ." However both non-union employees resigned before the City could discharge them.

Plaintiffs filed their original complaint in August 2012, claiming that they were terminated in retaliation for their union participation in violation of the First Amendment, as well as Louisiana Constitution art. I, § 7 (freedom of speech), § 9 (right to assemble peaceably/petition government), and art. X, § 10 (freedom of association). Plaintiffs further claimed the City was arbitrary and capricious in terminating them, and that there was no "just cause" for their terminations; thus, Plaintiffs claimed their union's CBA had been breached, and they had been denied substantive due process under the Fourteenth Amendment and under Louisiana Constitution art. I, § 2.

Plaintiffs contend that they were subjected to disciplinary actions and, ultimately, terminated because of Westrom's anti-union animus. In support of these allegations, Plaintiffs submitted the following evidence. When Westrom issued the November 10, 2008, verbal warning, Lawson testified that Westrom warned him not to coerce other employees to rebel against management decisions within the Sewer Department. Lawson testified that in January 2009, Westrom held Lawson's paycheck and instructed him to "quit talking to the other employees about union business." Westrom testified that in December 2008, he had "concerns" about Hall "stirring up the men" and he spoke with Hall about these concerns. Plaintiffs also point to Westrom's personal notes from April 22, 2008, to July 6, 2009, in which Westrom recorded several statements Plaintiffs alleged to be stereotypical anti-union comments. These comments were that Lawson was the "primary instigator" of a dispute about the surveillance cameras in the break room; "many of the problems that

5

No. 13-30931

I have had with the union have been instigated by Corey Lawson"; and "Stanley Hall was one of the ringleaders."

The district court granted summary judgment in favor of Defendants. The district court then dismissed with prejudice Plaintiffs' claims based on the federal and state constitutions and federal statutory law. To the extent Plaintiffs had asserted National Labor Relations Act ("NLRA") and Labor Management Relations Act ("LMRA") claims under state law, the district court declined to exercise supplemental jurisdiction and dismissed those claims without prejudice.

## II.

We review *de novo* a district court's grant of summary judgment, applying the same standard as the district court. *Ford Motor Co. v. Tex. Dep't of Transp.*, 264 F.3d 493, 498 (5th Cir. 2001). Summary judgment is proper when the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c). "A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Gates v. Tex. Dep't of Protective & Regulatory Servs.*, 537 F.3d 404, 417 (5th Cir. 2008) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). We may "affirm on any ground supported by the record, including one not reached by the district court." *Ballew v. Cont'l Airlines, Inc.*, 668 F.3d 777, 781 (5th Cir. 2012) (citing *Moncrief Oil Int'l, Inc. v. OAO Gazprom*, 481 F.3d 309, 311 (5th Cir. 2007)).

## III.

Plaintiffs argue that summary judgment in favor of Defendants was inappropriate because there are genuine issues of material fact as to whether Westrom terminated them because of their union activities and whether Plaintiffs were discharged for "just cause."

6

No. 13-30931

A.

Plaintiffs seek relief under 42 U.S.C. § 1983, which creates a private cause of action for violations of federal rights. In order to establish a § 1983 claim, Plaintiffs must establish: (1) that Defendants deprived Plaintiffs of rights protected under federal law or the United States Constitution; (2) that Defendants' actions were under color of state law or local law; and (3) that Defendants' actions caused Plaintiffs' damages. *See Victoria W. v. Larpenter*, 369 F.3d 475, 482 (5th Cir. 2004).

1.

Plaintiffs argue that they were deprived of their freedom of association protected by the First Amendment, which "encompasses the right of public employees to join unions and the right of their unions to engage in advocacy and to petition government in their behalf." *Prof'l Ass'n of Coll. Educators, TSTA/NEA v. El Paso Cnty. Cmty. Coll. Dist.*, 730 F.2d 258, 262 (5th Cir. 1984). To prevail on a First Amendment retaliation claim, Plaintiffs must show (1) that Plaintiffs suffered an adverse employment action; (2) that Plaintiffs' interest in associating outweighed Defendants' interest in efficiency; and (3) that Plaintiffs' association with the union was a substantial or motivating factor in the adverse employment action. *Hitt v. Connell*, 301 F.3d 240, 246 (5th Cir. 2002).

However, even assuming that Plaintiffs established a *prima facie* case, summary judgment in favor of Defendants is proper because Defendants here have successfully established a *Mount Healthy* affirmative defense. In *Mount Healthy City School District Board of Education v. Doyle*, the Supreme Court held that Defendants could escape liability by showing that they would have taken the same action even in the absence of the protected conduct. 429 U.S. 274, 287 (1977). "'[E]ven if we assume the exercise of protected first amendment activity played a substantial part in the decision to terminate an

employee, the termination is not unconstitutional if the employee would have been terminated anyway.'" *Gerhart v. Hayes*, 217 F.3d 320, 322 (5th Cir. 2000) (quoting *White v. South Park Indep. Sch. Dist.*, 693 F.2d 1163, 1169 (5th Cir. 1982)).

Defendants have provided unrefuted summary judgment evidence that Hall and Lawson would have been terminated whether or not they were associated with the union. According to the 1996 City of Monroe Employee Handbook, violation of Rule 27, falsifying City records, could result in discharge upon the first offense. For the July 2011 incident, Plaintiffs and the non-union employees were charged with violation of Rule 27. Westrom sought to terminate Plaintiffs and the non-union employees. The only reason non-union employees were not terminated in this instance was because they resigned before Westrom had a chance to terminate them. Accordingly, the district court did not err in granting summary judgment on Plaintiffs' First Amendment claim.

2.

Plaintiffs assert that their substantive due process rights were violated. To state a violation of substantive due process under the Fourteenth Amendment, "the plaintiff must show . . . (1) that he had a property interest/right in his employment, and (2) that the public employer's termination of that interest was arbitrary or capricious." *Lewis v. Univ. of Tex. Med. Branch of Galveston*, 665 F.3d 625, 630 (5th Cir. 2011).

Applying the first prong of a substantive due process analysis, Plaintiffs have demonstrated that they have a property interest in their employment because the CBA requires that union employees be terminated with cause. *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532 (1985). However, they cannot establish the second prong that the City acted arbitrarily or capriciously. In order to meet this second prong, Plaintiffs must show that the

No. 13-30931

decision was "made without a rational connection between the known facts and the decision or between the found facts and the evidence." *Meditrust Fin. Servs. Corp. v. Sterling Chems., Inc.*, 168 F.3d 211, 215 (5th Cir. 1999) (quotation marks omitted). It is undisputed that Plaintiffs violated Handbook Rules for which the appropriate disciplinary action was discharge. Thus, there was a rational connection between the disciplinary action and the violation.

3.

Plaintiffs also assert that the City violated certain sections of the NLRA. Specifically, Plaintiffs argue that: (1) the City made unilateral changes in terms and conditions of employment in violation of Section 8(a)(1) and (5) of the NLRA; (2) the City denied union representation at investigation interviews in violation of Section 7 of the NLRA; and (3) the City engaged in surveillance of union employees in violation of Section 8(a)(1) of the NLRA. However, we lack jurisdiction over Plaintiffs' NLRA claims because the Supreme Court has held that the National Labor Relations Board ("NLRB") has exclusive jurisdiction over unfair labor practices under the NLRA. *Int'l Longshoremen's Ass'n, AFL-CIO v. Davis*, 476 U.S. 380, 397 (1986) ("When an activity is arguably subject to § 7 or § 8 of the [NLRA], the States as well as the federal courts must defer to the exclusive competence of the [National Labor Relations] Board." (internal quotation marks omitted)). We would have jurisdiction over an appeal from a final judgment of the NLRA under 29 U.S.C. § 160(f). However, Plaintiffs have not asserted, and the record does not show, that they first filed their NLRA claims with the NLRB. Accordingly, the district court was correct in granting summary judgment on Plaintiffs' NLRA claims.

B.

Plaintiffs also allege that Defendants breached the CBA by terminating their employment without just cause. This claim arises under Section 301(a) of the LMRA. *See Thomas v. LTV Corp.*, 39 F.3d 611, 616 (5th Cir. 1994)

("Section 301 of the LMRA provides the requisite jurisdiction and remedies for individual employees covered under a collective-bargaining agreement between that individual's employer and the union."). However, the LMRA exempts states and political subdivisions, including municipalities, from suits under the LMRA. 29 U.S.C. § 152(2); *see Johnson v. City of Monroe*, No. 06-0635, 2007 WL 1521436, *6 (W.D. La. May 21, 2007) ("[F]ederal courts cannot create a cause of action against a municipal employer and union when such claims are clearly exempted from § 301 coverage."); *see also* 29 U.S.C. § 142(3) (Under the LMRA, "[t]he terms . . . 'employer' [and] 'employee' . . . shall have the same meaning as when used in [the National Labor Relations Act]."); 29 U.S.C. § 152(2) ("The term 'employer' . . . shall not include . . . any State or political subdivision thereof . . . ."). Because Defendants are exempt from the LMRA, summary judgment was proper on this claim.

AFFIRMED.