# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

August 17, 2021

Lyle W. Cayce
Clerk

No. 20-50501

UNITED STEEL, PAPER AND FORESTRY, RUBBER
MANUFACTURING, ENERGY, ALLIED INDUSTRIAL AND SERVICE
WORKERS INTERNATIONAL UNION; UNITED STEEL WORKERS
INTERNATIONAL UNION; BEXAR COUNTY PROBATION OFFICERS
ASSOCIATION UNITED STEELWORKERS LOCAL 9528; TRISHA
CANTU, *as next friend of* J.M.C., *a minor*; EMILY ANN CAROLINE
CASTILLEJA,

*Plaintiffs—Appellants*,

*versus*

JARVIS ANDERSON; BRIAN BRADY,

*Defendants—Appellees*.

Appeal from the United States District Court
for the Western District of Texas
USDC No. 5:17-CV-1242

Before JOLLY, DUNCAN, and OLDHAM, *Circuit Judges*.

STUART KYLE DUNCAN, *Circuit Judge*:

Sergio Castilleja's children and various unions appeal the summary judgment dismissal of their claims that Castilleja was fired for engaging in union-related activities in violation of the First Amendment, the Equal Protection Clause, and Texas law. We affirm.

# I. Background

## A. Facts

Castilleja spent fifteen years as a community service officer ("CSO"), or probation officer, for the Bexar County Community Supervision and Corrections Department ("CSCD").[1] His career was marked by multiple reprimands and termination warnings. When the events at issue here took place, Castilleja was on "zero tolerance," meaning he could be immediately fired for any infraction of CSCD policies.

After Castilleja was transferred in December 2014, his new manager, John Escalante, suspected Castilleja was violating overtime rules. An investigation by Assistant Chief Sloane Kelly confirmed that was true: Castilleja was routinely taking unapproved overtime and using his work computer to send union-related emails. Although she recommended to Chief Jarvis Anderson that he be fired, Castilleja only received counseling and was put on a "performance improvement plan" in April 2015.

In Castilleja's October 2015 evaluation, Escalante rated him "satisfactory" overall but gave him the lowest rating in multiple categories, including "[f]ollow[ing] departmental policies and procedures," and noted numerous areas needing improvement, including the key area of reporting probationers' violations to the court. Still, Escalante praised Castilleja's work and described him as "experienced, wise, intelligent, and knowledgeable" and "an asset."

On January 28, 2016, Castilleja was sworn in as president of the Bexar County Probation Officers Association ("BCPOA").[2] According to

---

[1] Castilleja passed away during the litigation. The district court allowed substitution of Emily Ann Caroline Castilleja, Castilleja's adult daughter, and Trisha Cantu, as next friend of Castilleja's minor daughter. We continue to refer to the plaintiff-appellant as Castilleja.

[2] He had served in the BCPOA since 2007.

Castilleja, the next day Anderson asked him to stop the union's second no-confidence petition against Anderson, but Castilleja refused. The previous BCPOA president, Sherri Simonelli, recalled that she told Anderson around that time that a no-confidence vote was imminent and that Anderson responded he would "go after Sergio hard" and he "hated" him. Anderson denied saying this.

In February 2016, Castilleja switched units with another CSO, Lindsey Fermin, who found "serious case management issues" in Castilleja's work that required notifying the court of unreported violations. This was reported to then-Assistant Chief Brian Brady. Around that time, Anderson himself became aware of a "troubling" case Castilleja had managed and, as a result, ordered an audit of 100 of Castilleja's former cases. In May, Escalante reviewed some of those cases, revealing the most "egregious" case management deficiencies he had ever seen. Had Escalante known about them, he said, he would not have commended Castilleja in the 2015 review. Brady's own review revealed Castilleja's "blatant disregard to instructions from the judges" as well as "gross negligence in [case] management," "documentation of errors," "reporting of violations to the courts," and "total disregard for the protection of the community."[3] He found similar problems in Castilleja's new cases. As a result, Brady recommended firing Castilleja. He later explained that, as an experienced officer, Castilleja's disregard of "the basic ten[e]ts of case management" made his violations especially damning.

---

[3] For example, in a DWI case where the court required use of an ignition interlock, Castilleja unilaterally permitted urinalysis tests instead, thus allowing the probationer to drink and drive. Castilleja also failed to report two positive alcohol tests, notifying the court only after the probationer was arrested for a third DWI. In another case, Castilleja permitted a probationer to avoid reporting for sixteen months and travel to Austin for the school year without court approval. The probationer reported using alcohol and drugs thirty to forty times while unsupervised.

On August 5, 2016, Castilleja received a proposed adverse action ("PAA") recommending termination. The PAA cited not only Castilleja's numerous case management and policy violations, but also two instances of conducting union business while at work, and one use of work email to send union-related emails. Castilleja appealed.

Meanwhile, on November 9, 2016, the BCPOA issued a no-confidence petition calling for Anderson's removal.

On November 15, 2016, Anderson heard Castilleja's appeal. When confronted with the case management violations, Castilleja explained he was used to having "discretion and working things out," acknowledged his failure to respect the court's authority, and insisted he "never meant to not follow the policy." Asked if he would report violations in the future, Castilleja said he would "try [his] best." Anderson fired Castilleja on January 3, 2017. The final decision notice cited the evidence presented in the PAA and called "unacceptable" Castilleja's "questionable ethical professional conduct" and "inability to comply" with CSCD policies and procedures.

## B. Procedural History

On December 7, 2017, Castilleja—along with the BCPOA and its affiliate the United Steelworkers International Union (collectively, the "Unions")[4]—sued Anderson and Brady in federal court in their individual and official capacities. The plaintiffs generally claimed Castilleja was fired in retaliation for his union-related speech and association in violation of the First Amendment, federal law, and Texas law.

Specifically, the operative complaint[5] asserted: (1) Castilleja's First Amendment retaliation claim under 42 U.S.C. § 1983 against Anderson and Brady; (2) the Unions' First Amendment claim against Anderson; (3) the

---

[4] Unless otherwise indicated, our references to Castilleja include the Unions.

[5] This is the first amended complaint, filed in June 2018.

Unions' equal-protection claims against Anderson; (4) Castilleja's claim under Texas Labor Code § 101.301 against Anderson and Brady; and (5) a 42 U.S.C. § 1985 conspiracy claim against Anderson and Brady.[6] Plaintiffs sought injunctive relief and damages. The parties filed cross motions for summary judgment. The district court granted Anderson and Brady's motion, dismissing all claims against them. This appeal followed.

## II. STANDARD OF REVIEW

We review a summary judgment *de novo*. *Patel v. Tex. Tech Univ.*, 941 F.3d 743, 747 (5th Cir. 2019). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). We view the evidence in the light most favorable to the non-movant, "drawing all justifiable inferences in the non-movant's favor." *Renwick v. PNK Lake Charles, L.L.C.*, 901 F.3d 605, 611 (5th Cir. 2018) (cleaned up).

## III. DISCUSSION

### A. First Amendment Retaliation

We first consider Castilleja's claim that he was fired in retaliation for his union-related speech and activity, in violation of the First Amendment. Our precedent articulates slightly different standards depending on whether a retaliation claim turns on a plaintiff's union-related speech or association.[7] Both standards, however, require a causal relationship between the protected

---

[6] Castilleja does not appeal the dismissal of the § 1985 claim.

[7] *Compare Anderson v. Valdez*, 845 F.3d 580, 590 (5th Cir. 2016) (speech-related claim requires showing: (1) plaintiff suffered adverse employment action; (2) plaintiff spoke on matter of public concern; (3) plaintiff's speech interest outweighed government's efficiency interest; and (4) speech "precipitated" adverse action (citation omitted)), *with Hitt v. Connell*, 301 F.3d 240, 246 (5th Cir. 2002) (union-association claim requires showing: (1) plaintiff suffered adverse employment action; (2) plaintiff's associational interest outweighed government's efficiency interest; and (3) association was "a substantial or motivating factor" in adverse action (citations omitted)).

activity and the adverse employment action. *See, e.g.*, *Garza v. Escobar*, 972 F.3d 721, 728–29 (5th Cir. 2020) (adverse action must have been "because of" speech (citation omitted)); *Hitt v. Connell*, 301 F.3d 240, 246 (5th Cir. 2002) (union association must have been "a substantial or motivating factor" in adverse action (citations omitted)). If a plaintiff makes this showing, both claims permit an affirmative defense, known as the "*Mt. Healthy* defense": the employer may avoid liability by "showing a legitimate reason for which it would have discharged the employee even in the absence of his protected conduct." *Coughlin v. Lee*, 946 F.2d 1152, 1157 (5th Cir. 1991) (citing *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)). Finally, the plaintiff may rebut by showing the employer's proffered reason is pretextual. *Haverda v. Hays County*, 723 F.3d 586, 592 (5th Cir. 2013).

The district court assumed Castilleja presented sufficient evidence of causation. But it granted Anderson summary judgment based on the *Mt. Healthy* defense—*i.e.*, that Anderson had legitimate reasons to fire Castilleja apart from his protected conduct, reasons Castilleja failed to show were pretextual. Castilleja argues this was error, but we agree with the district court.

First, the evidence shows without dispute that Anderson had valid reasons for firing Castilleja. Anderson emphasizes three that are well-supported by the record: (1) Castilleja's mismanagement of numerous cases in violation of CSCD policies after incurring multiple sanctions, including being placed on zero tolerance[8] and being disciplined for repeated overtime violations; (2) the "egregious" nature of Castilleja's case management

---

[8] When asked at oral argument about "zero tolerance," Castilleja's counsel claimed the policy could be understood to cover only offenses like the one that triggered its application to Castilleja (a physical altercation). O.A. Rec. at 6:43–8:00. The record contradicts this, however. The policy stated Castilleja could be "immediately" fired for "any infraction of [CSCD's] administrative policies and case management procedures." And the record shows Castilleja admitted he understood that.

violations, as attested by multiple witnesses including Fermin, Escalante, and Brady; and (3) Castilleja's insistence that his "discretion[ary]" style somehow excused those violations. Moreover, those reasons were reflected in the PAA, in Brady's firing recommendation, and in Anderson's final decision notice. *See Gerhart v. Hayes*, 217 F.3d 320, 322 (5th Cir. 2000) (*Mt. Healthy* defense established where termination letter relied on employer's proffered, permissible reasons). We therefore agree Anderson showed undisputedly that he had valid reasons to fire Castilleja apart from any protected activity.[9]

Second, we disagree with Castilleja that the evidence raised a genuine dispute that the reasons given for his firing were pretextual. For instance, Castilleja points to Escalante's "glowing" comments in his 2015 review. But this overlooks that the same review gave Castilleja the lowest rating in multiple categories and stated he needed improvement in the key area of reporting violations to the court. Moreover, Escalante wrote the review before learning of Castilleja's worst lapses and testified that, had he known about them, he would not have made the positive comments.[10] Castilleja also claims he was treated differently from other officers with similar records. But none of the officers Castilleja identifies had disciplinary histories as bad as his, none had Castilleja's experience, and none was on zero tolerance. Moreover, the evidence does not even show Anderson or Brady was aware of

---

[9] This evidence is at least as substantial as evidence previously found sufficient on summary judgment to satisfy *Mt. Healthy*. *See Beattie v. Madison Cnty. Sch. Dist.*, 254 F.3d 595, 604 (5th Cir. 2001) (school board members' testimony that they would have fired teacher based on complaints she was rude to students, parents, and teachers); *Gerhart*, 201 F.3d at 322 (evidence that employee failed in assigned duty to improve funding).

[10] Castilleja asserts the "surreptitious" nature of the audits that uncovered these lapses shows pretext. But he identifies no evidence suggesting the audits were anything other than a rational response to deficiencies discovered in Castilleja's cases by Anderson and Fermin.

these other officers and failed to discipline them.[11] *Cf. Jordan v. Ector County*, 516 F.3d 290, 300 (5th Cir. 2008) (pretext shown when other employees "engaged in similar conduct without being disciplined"). Finally, Castilleja claims his firing diverged from CSCD practice of first offering training or intermediate sanctions. But even if pretext could be inferred from such evidence,[12] the record does not show CSCD's practice was to offer more training or lesser sanctions in a situation like this—where an experienced officer, despite repeated discipline and warnings, persisted in committing serious violations. In sum, we conclude the evidence did not raise a genuine dispute that Anderson's reasons for firing Castilleja were pretextual.

That conclusion disposes of Castilleja's First Amendment retaliation claim against Anderson in his official capacity for injunctive relief. It also disposes of the same claim against Anderson and Brady in their individual capacities for damages. Because we have found no First Amendment violation arising from Castilleja's firing, Anderson and Brady necessarily merit qualified immunity on this claim.[13] Finally, similar reasoning also

---

[11] Manager Sherri Simonelli's declaration testimony that Castilleja's errors were "common for probation officers" is similarly inadequate without evidence those other CSOs had comparable histories and experience levels, faced the threat of zero tolerance, and yet received different treatment.

[12] Our precedent in the employment discrimination context suggests that procedural departures alone cannot support an inference of pretext. *See, e.g.*, *EEOC v. Tex. Instruments, Inc.*, 100 F.3d 1173, 1183 (5th Cir. 1996) (replacing seniority policy to reduce workforce and promote efficiency did not create an inference of age discrimination without "clear nexus to discrimination"); *Risher v. Aldridge*, 889 F.2d 592, 597 (5th Cir. 1989) (no inference of pretext from failure to use required criteria in appraising plaintiff's performance without evidence she was evaluated in a discriminatory way); *Moore v. Eli Lilly & Co.*, 990 F.2d 812, 819 (5th Cir. 1993) (rejecting argument that failure to follow termination procedures established pretext under the ADEA).

[13] *See, e.g.*, *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (to overcome qualified immunity, plaintiff must show that (1) "the official violated a statutory or constitutional right," and (2) "the right was 'clearly established' at the time of the challenged conduct" (citation omitted)). The district court reached the same conclusion by relying on the "clearly established law" prong of qualified immunity. But we may rely on either prong, *ibid.*, and we "may affirm summary judgment on any ground raised below and supported

dispatches the Unions' First Amendment retaliation claim. The sole basis for the Unions' claim is that Castilleja was fired in retaliation for his union-related speech and association. *See Allee v. Medrano*, 416 U.S. 802, 819 n.13 (1974) (because "the union can act only through its members," it may bring a First Amendment claim if "its members were subject to . . . intimidation for engaging in union organizational activity"). Because Castilleja's claim fails, the district court also properly dismissed the Unions' claim.

## B. Equal Protection

The Unions complain that the district court erred by dismissing on summary judgment their class-of-one equal-protection claim against Anderson. That claim rests on allegations that Anderson treated them less favorably than other similarly situated organizations (specifically, the Texas Probation Association and the Combined Law Enforcement Association of Texas ("CLEAT")) by penalizing Castilleja for conducting BCPOA business on work time and with work equipment.

"A class-of-one equal-protection claim lies where the plaintiff alleges that it has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Integrity Collision Ctr. v. City of Fulshear*, 837 F.3d 581, 586 (5th Cir. 2016) (quoting *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)) (cleaned up). We have recognized, however, that "[i]n *Engquist* [*v. Oregon Department of Agriculture*], the [Supreme] Court held that class-of-one equal-protection claims are inapposite in the context of discretionary public-employment decisions." *Ibid.* (citing *Engquist v. Or. Dep't of Agric.*, 553 U.S. 591 (2008)). The district court correctly concluded that *Engquist* precludes the Unions' class-of-one claim, which attacks a public entity's discretionary decision about employee discipline.

---

by the record." *See, e.g.*, *Ballard v. Devon Energy Prod. Co.*, 678 F.3d 360, 365 (5th Cir. 2012) (citation omitted).

The Unions argue that *Engquist* and *Integrity Collision* concern only hiring and firing, not the access-to-facilities issue presented here. We disagree. *Engquist* specified that class-of-one claims have "no application in the public employment *context*," which covers "not only hiring and firing decisions," but also "any personnel action, such as promotion, salary, or work assignments." 553 US. at 607–08 (emphasis added); *see also Integrity Collision*, 837 F.3d at 587 (applying *Engquist* to city's purchase of tow services, which involved "subjective, individualized assessments" of "reputation, personal experience"). The Unions' challenge to how the facilities policy was applied is a "claim of differential treatment" the Supreme Court has refused to recognize. *Engquist*, 553 U.S. at 608. The district court properly granted summary judgment dismissing the Unions' equal-protection claim.[14]

## C. Texas Labor Code

Lastly, we turn to Castilleja's argument that the district court wrongly dismissed his claims under Texas Labor Code § 101.301 based on its finding Brady and Anderson entitled to official immunity under Texas law.[15] Castilleja's briefing on this point is anemic: it states in a single sentence, without citing authority, that Anderson and Brady "were not acting in good faith or within the scope of their duties . . . because Castilleja was terminated because of his union activities." Castilleja has forfeited this challenge by

---

[14] We therefore need not consider the district court's alternative holdings that the Texas Probation Association was not similarly situated to BCPOA and that the evidence did not show official approval of CLEAT's use of facilities.

[15] Texas law authorizes a damages action against an employer for violating a person's right to work, including his right to be "free from threats, force, intimidation, or coercion." TEX. LAB. CODE § 101.301(a)–(c). To merit official immunity from such claims, officials must show their actions were (1) "discretionary duties," (2) performed in "good faith," (3) "within the scope of their authority." *City of Lancaster v. Chambers*, 883 S.W.2d 650, 653 (Tex. 1994).

failing to brief it adequately on appeal. *See Rutherford v. Harris County*, 197 F.3d 173, 193 (5th Cir. 1999).

## IV. Conclusion

The district court's judgment is AFFIRMED.