# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**
September 20, 2016

Lyle W. Cayce
Clerk

No. 15-20560

INTEGRITY COLLISION CENTER; BUENTELLO WRECKER SERVICE,

Plaintiffs–Appellees,

versus

CITY OF FULSHEAR,

Defendant–Appellant.

Appeal from the United States District Court
for the Southern District of Texas

Before KING, SMITH, and COSTA, Circuit Judges.

JERRY E. SMITH, Circuit Judge:

The City of Fulshear, Texas, appeals an order sought by Integrity Collision Center ("Integrity") and Buentello Wrecker Service ("Buentello") requiring it to include them on the city's "non-consent tow list" and to develop neutral criteria for that list. We reverse and render judgment in favor of the city.

## I.

After withdrawing from Fort Bend County's program in April 2012, the city established its own non-consent tow list of private companies it calls upon

No. 15-20560

to tow vehicles that are to be impounded. The police chief included only two companies, Riverside Collision and A&M Automotive, thus excluding Integrity and Buentello, which are towing companies operating in the county. There was no formal process for reaching that decision.

In May 2012, Integrity and Buentello began requesting information on the requirements for being added to the list, and in January 2014 they received a response detailing the police department's requirements. To be included, the police chief required towing companies to have outside and secure inside storage facilities within ten miles of the city, a million dollars in insurance coverage, a heavy-duty wrecker, so-called "rollback-capable wreckers," the ability to handle hazardous materials, a thirty-minute response time in the city, and background checks on their drivers. Integrity and Buentello claimed to have met all of those criteria except for the ten-mile limit, but the chief refused to include them on the list.

Discovery revealed that the chief's actual requirements for inclusion were more amorphous. The ten-mile limit was only a generalized proximity requirement, and A&M Automotive was outside that range. The chief believed a more important factor was the ability of the companies on the list to "support each other." He explained that "the two wreckers that are satisfying the needs of what I have and what—what I need out of wrecker companies." But he also said that he "probably" would have included a third company if it had met his requirements.

II.

Integrity and Buentello sued the city in state court in July 2014, alleging that its refusal to include them on the non-consent tow list violated the Equal Protection Clause of the Fourteenth Amendment. The city removed to federal court, and Integrity and Buentello amended the complaint to clarify that the

2

claim was brought as a class-of-one claim under 42 U.S.C. § 1983.

The parties filed cross-motions for summary judgment. Integrity and Buentello contended that the city had no rational basis for excluding them despite being similarly situated to companies on the list. The city maintained that the plaintiffs had no legal claim (because creating the list was a discretionary decision that was not subject to a class-of-one equal protection claim) and that there was a sufficient rational basis.

On August 28, 2015, the district court issued an "Opinion on Summary Judgment," directing, *inter alia*, that "[t]he City of Fulshear must include Integrity and Buentello in its towing rotation" and granting summary judgment for them, holding that there was no rational basis for the refusal to include them on the list. Seven days later, the court entered an Initial Order on Remedy," reading, in its entirely, as follows:

> 1. By 12:00 p.m. on September 9, 2015, the City of Fulshear must include Integrity Collision Center and Buentello Wrecker Service in the City's towing rotation.
>
> 2. By October 23, 2015, the City of Fulshear must publish rational, specific, and neutral criteria for other companies' admission into the towing rotation. The published criteria must be the sole consideration for admission into the towing program—enforced consistently for all applicants.

On September 28, the city filed a notice of appeal "from the Opinion on Summary Judgment entered in this action on August 28, 2015 and the Initial Order on Remedy entered September 4, 2015."[1]

---

[1] On October 5, 2015, the district court denied the city's motion for stay pending appeal, and on October 22, a motions panel of this court denied a motion for stay for a lack of a showing of irreparable harm but explained that "[t]his denial implies no position on the [city's] likelihood of success on the merits."

3

No. 15-20560

III.

The parties disagree on whether we have appellate jurisdiction.  There is no doubt, however, that "we have jurisdiction to determine our own jurisdiction." *Brown v. Pac. Life Ins. Co.*, 462 F.3d 384, 390 (5th Cir. 2006).

In its opening brief, the city asserts that "[t]his is not an appeal from a final order or judgment [but] is an appeal of a preliminary injunction under 28 U.S.C. § 1292(a)," which gives the courts of appeals "jurisdiction of appeals from: (1) interlocutory orders of the district courts . . . granting, continuing, modifying, refusing or dissolving injunctions . . . ."  In their brief, Integrity and Buentello "contend that no basis for appellate jurisdiction exists in this appeal," reasoning that neither the Opinion on Summary Judgment nor the Initial Order on Remedy is a preliminary injunction.

Regarding their claim that nothing issued by the district court is presently appealable, Integrity and Buentello clarified, at oral argument, that they liken the Initial Order on Remedy to a discovery order, which normally would not be immediately appealable.  We disagree with that explanation.  "A district court 'grant[s]' an injunction when an action it takes is "directed to a party, enforceable by contempt, and designed to accord or protect some or all of the substantive relief sought in the complaint in more than a temporary fashion." *In re Deepwater Horizon*, 793 F.3d 479, 491 (5th Cir. 2015).  The district court ordered the city to include Integrity and Buentello on its non-consent tow list and to develop neutral, exclusive, published criteria for that list as the remedy for its judgment of liability against the city.  That order is directed at the city, is subject to enforcement by the district court, and provides substantive relief for Integrity and Buentello.  It is therefore an injunction, appealable under

4

No. 15-20560

Section 1292(a)(1), so we have appellate jurisdiction.[2]

## IV.

The city questions the ruling that the exclusion of Integrity and Buentello from its non-consent tow list violates the Equal Protection Clause of the Fourteenth Amendment. The city contends that class-of-one equal-protection claims do not apply to the decision to exclude a company from a non-consent tow list and, if they do, the city has provided a sufficient rational basis for the exclusion. We agree.

A class-of-one equal-protection claim lies "where the plaintiff alleges that [it] has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). "Typically, a class of one involves a discrete group of people, who do not themselves qualify as a suspect class, alleging the government has singled them out for differential treatment absent a rational basis." *Wood v. Collier*, No. 16-20556, --- F.3d ---, 2016 U.S. App. LEXIS 16693, at *12 (5th Cir. Sept. 12, 2016). Such a theory of recovery includes "forms of state action . . . which by their nature involve discretionary decisionmaking based on a vast array of subjective, individualized assessments." *Id.* (quoting *Engquist v. Oregon Dep't of Agric.*, 553 U.S. 591, 603 (2008)).

In *Engquist*, the Court held that class-of-one equal-protection claims are inapposite in the context of discretionary public-employment decisions. To that effect, in *Chavers v. Morrow*, 449 F. App'x 411 (5th Cir. 2011) (per curiam),

---

[2] Having found jurisdiction to review the September 4 order as an injunction, we need not address whether either that order or the August 28 order awarding summary judgment is a final judgment appealable under 28 U.S.C. § 1291 in the absence of a judgment entered as a "separate document" as required by Federal Rule of Civil Procedure 58(a).

No. 15-20560

we summarily affirmed a holding that a class-of-one equal-protection claim "is unavailable in a 'public employment context.'" *Chavers v. Morrow*, 2010 U.S. Dist. LEXIS 89432, at *13 (S.D. Tex. Aug. 30, 2010) (citing *Engquist*, 553 U.S. at 594). That conclusion logically applies as well to a local government's discretionary decision to include or not include a company on a non-consent tow list, where "allowing equal protection claims on such grounds 'would be incompatible with the discretion inherent in the challenged action.'" *Wood*, 2016 U.S. App. LEXIS 16693, at *13 (quoting *Engquist*, 553 U.S. at 604). Alternatively, Integrity and Buentello's class-of-one equal-protection claim fails because they have not shown that the city had a discriminatory intent and because the city has a rational basis for excluding them.

## A.

Class-of-one equal-protection claims are "an application of [the] principle" that the seemingly arbitrary classification of a group or individual by a governmental unit requires a rational basis. *Engquist*, 553 U.S. at 602. Such a potential theory of recovery is available where there is "a clear standard against which departures, even for a single plaintiff, could be readily assessed." *Id.* In *Olech*, 528 U.S. at 565, the Court recognized an equal-protection claim where a municipality demanded more than double the easement onto the plaintiff's property, to connect her to the water supply, than for any other property. The physical space required for a water-line connection was measurable and allowed the Court reasonably to evaluate the municipality's decision to demand the use of more land in that single instance. "There was no indication in *Olech* that the zoning board was exercising discretionary authority based on subjective, individualized determinations . . . however typical such determinations may be as a general zoning matter." *Engquist*, 553 U.S. at 602–03.

Discretionary decisions about whom to hire as an employee or a service

6

provider do not yield the same "clear standard" by which an equal-protection claim can be evaluated. In *Engquist*, *id.* at 603, the Court held that employment decisions

> by their nature involve discretionary decisionmaking based on a vast array of subjective, individualized assessments. In such cases the rule that people should be "treated alike, under like circumstances and conditions" is not violated when one person is treated differently from others, because treating like individuals differently is an accepted consequence of the discretion granted. In such situations, allowing a challenge based on the arbitrary singling out of a particular person would undermine the very discretion that such state officials are entrusted to exercise.

The same type of "subjective, individualized assessments" go into a city's decision to purchase services from private companies for its non-consent tows.[3] There are measurable factors, such as proximity, insurance coverage amounts, and types of equipment, to be sure. There are also equally important factors that are not reasonably measurable, such as reputation, personal experience, and the particularities of how the city wishes to operate its non-consent tow program.

The police chief's considerations as he drew up the non-consent tow list demonstrate this well. As part of the selection process, he considered previous experience working with the chosen companies on non-consent tows. He thought it important that the towing companies be able to "work together" and "support each other" in completing towing assignments. He concluded that two companies were enough to satisfy the city's non-consent needs. Those considerations are a reasonable part of a purchasing decision, and the exclusion of

---

[3] A city is a consumer of towing companies' services when it contracts for non-consent tows. *Cardinal Towing & Auto Repair, Inc. v. City of Bedford, Tex.*, 180 F.3d 686, 697 (5th Cir. 1999).

some companies is an inevitable result.[4] Municipalities are not compelled by the Equal Protection Clause, as Integrity and Buentello claim, to develop a formal process with constitutionally measurable criteria for determining from whom they will purchase towing services. *See Engquist*, 553 U.S. at 606. In this regard, the decision is not different from the process of selecting other outside services, such as a janitorial or pest-control service.

Furthermore, it is impractical for the court to involve itself in reviewing these countless discretionary decisions for equal-protection violations. *Engquist*, 553 U.S. at 608. For example, Integrity and Buentello ask us to resolve whether it is plausible that a city has substantially increased the number of police officers but still requires only two companies for non-consent tows. Making such a determination is no more practical than second-guessing the merits of a given individual employment decision or of a decision not to use additional janitorial companies despite an increase in the number of city buildings. The quality and number of towing companies the city requires to conduct non-consent tows is not for us to decide, nor is it something that the Equal Protection Clause informs.[5] As with employment, "[t]he Equal Protection Clause does not require '[t]his displacement of managerial discretion by judicial

---

[4] Texas law imposes no standard for selecting companies for a non-consent tow list. Texas police officers have "been given legislative authorization to tow a vehicle, [and] inherent in that authorization is the right to make reasonable decisions about who is permitted to do the towing." *Fort Bend Cty. Wrecker Ass'n v. Wright*, 39 S.W.3d 421, 425 (Tex. App.—Houston [1st Dist.] 2001, no pet.). Towing companies also have no "entitlement for access to, presence upon, or the right to control a county wrecker rotation list" as long as they "still have a right to do business with private individuals." *Id.* at 427. Integrity and Buentello do not claim that they are prohibited from so doing.

[5] "Of course, an allegation that speeding tickets are given out on the basis of race or sex would state an equal protection claim, because such discriminatory classifications implicate basic equal protection concerns. But allowing an equal protection claim on the ground that a ticket was given to one person and not others, even if for no discernable or articulable reason, would be incompatible with the discretion inherent in the challenged action." *Engquist*, 553 U.S. at 604 (quoted in *Wood*, 2016 U.S. App. LEXIS 16693, at \*13 n.33).

supervision.'" *Engquist*, 553 U.S. at 608–09 (quoting *Garcetti v. Ceballos*, 547 U.S. 410, 423 (2006)).

## B.

Even if the Equal Protection Clause were applicable, Integrity and Buentello do not meet the requirements for bringing such a claim.[6] They must show that the city "treat[ed] similarly situated individuals differently *for a discriminatory purpose*."[7] Discriminatory intent requires that the city's decision must be made at least in part because of its discriminatory effect on Integrity and Buentello rather than mere knowledge that adverse consequences will result.[8]

In the amended complaint, summary-judgment briefing, and appellate briefing, Integrity and Buentello do not allege or offer any evidence of an intent to discriminate, relying instead solely on the alleged arbitrariness of the

---

[6] Integrity and Buentello also have not satisfied the pleading requirements for a municipal-liability claim under Section 1983. Municipal liability for a constitutional violation will lie where that violation results from an "official custom or policy" of the city. *Piotrowski v. City of Hous.*, 237 F.3d 567, 579 (5th Cir. 2001).

Integrity and Buentello challenge the single decision to exclude them from the non-consent tow list. The city can be liable for that decision only if it was made by an official with "final policymaking authority" as determined by state law, *City of St. Louis v. Praprotnik*, 485 U.S. 112, 123–24 (1988), as distinguished from "final decisionmaking authority," *Bolton v. City of Dall., Tex.*, 541 F.3d 545, 548 (5th Cir. 2008). The plaintiffs have made no claim nor provided any evidence that the police chief has final policymaking authority. Instead, they plead that he was "acting without guidance from city officials or due consideration of any applicable statutes, code ordinances, or Constitutional obligations," and the city is liable for that on a *respondeat superior* theory. Such a theory is not cognizable in a Section 1983 municipal-liability claim. *See Praprotnik*, 485 U.S. at 126.

[7] *Gil Ramirez Grp., L.L.C. v. Hous. Indep. Sch. Dist.*, 786 F.3d 400, 419 (5th Cir. 2015); *see also Olech*, 528 U.S. at 564 ("Our cases have recognized successful equal protection claims brought by a 'class of one,' where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.").

[8] *See Gil Ramirez Grp.*, 786 F.3d at 419–20 (citing *Personnel Adm'r of Mass. v. Feeney*, 442 U.S. 256, 279 (1979)) (holding that discrimination in favor of others is insufficient, by itself, to show that the plaintiff was discriminated against).

decision. There is also no finding by the district court of discriminatory intent but only a similar reliance on the *ad hoc* decisionmaking of the police chief.

Integrity and Buentello also failed to demonstrate that there is no rational basis upon which the city could have excluded them from the non-consent tow list. Because there is no suspect class, the exclusion "must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." *Heller v. Doe*, 509 U.S. 312, 320 (1993). "Moreover, the State need not articulate its reasoning at the moment a particular decision is made. Rather the burden is on the challenging party to negative 'any reasonably conceivable state of facts that could provide a rational basis.'" *Bd. of Trs. of Univ. of Ala. v. Garrett*, 531 U.S. 356, 367 (2001) (quoting *Doe*, 509 U.S. at 320).

The plaintiffs have not carried their burden of negating all rational bases for the decision to exclude them. That the police chief believes he needs no more than two companies to satisfy the city's non-consent tow requirements is sufficient justification to survive rational-basis review.[9]

The orders complained of are REVERSED, and a judgment of dismissal with prejudice is RENDERED for the City of Fulshear.

---

[9] Although the chief acknowledged that he "probably" would have added a third towing service to the list if any had met his requirements, there is no evidence that he ever did. Thus, the explanation that only two towing companies are necessary remains a sufficient conceivable rational basis, given that the city has never expanded the list.