

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————————

No. 02-18-00029-CV

———————————————————

IN THE INTEREST OF J.C., A CHILD

On Appeal from the 324th District Court
Tarrant County, Texas
Trial Court No. 324-577171-15

Before Sudderth, C.J.; Gabriel and Birdwell, JJ.
Opinion by Justice Gabriel

**OPINION**

P.A. (Peter)[1] appeals from the trial court's denial of his petition to adjudicate parentage, which he brought to establish a father–child relationship with J.C. (Justin). But Justin has a presumed father, and Peter filed this suit more than four years after Justin's birth. In such circumstances, with only two exceptions, section 160.607 of the Texas Uniform Parentage Act (TUPA) bars an individual from commencing a suit to adjudicate parentage. *See* Tex. Fam. Code Ann. § 160.607. The trial court found neither exception applies in this case and thus denied Peter's suit as untimely. In his sole issue, Peter argues, as he did in the trial court, that he should not be barred from bringing this suit based upon section 160.607 because that provision is unconstitutional. The trial court disagreed. So do we. We therefore affirm.

## I. BACKGROUND[2]

K.C. (Kelly) married I.C. (Ivan) on July 19, 2008, and they are still married. They have lived together since their marriage and have never separated. Justin was born to Kelly in July 2010; thus, Justin's probable date of conception was in either

---

[1]To preserve the privacy of the child, we identify the parties by pseudonyms. *See* Tex. Fam. Code Ann. § 109.002(d).

[2]The trial court filed findings of fact and conclusions of law, and no party challenges any of those findings on appeal. Our recitation of the facts relevant to this appeal is drawn from the trial court's findings. *See Raman Chandler Props., L.C. v. Caldwell's Creek Homeowners Ass'n*, 178 S.W.3d 384, 390 (Tex. App.—Fort Worth 2005, pet. denied) ("Unchallenged findings of fact are binding unless the contrary is established as a matter of law or there is no evidence to support the findings.").

September or October 2009. Kelly and Ivan engaged in sexual relations on a regular basis during the period of time when Justin was conceived.

During that same time period, Kelly was also having sexual relations with Peter, and Kelly's extramarital affair continued for approximately four years. While she was pregnant with Justin, Kelly told Peter that he was Justin's biological father and continued to tell Peter that fact after Justin's birth.

When Kelly told Ivan that she was pregnant with Justin, Ivan believed he was Justin's biological father and continued to believe he was Justin's biological father through at least the first four years of Justin's life. Justin knows only Ivan as his father, and Ivan has a close and loving parent–child relationship with Justin.

In January 2011, Peter obtained a DNA test confirming that he is Justin's biological father. Peter, however, never filed an acknowledgment of paternity. Peter did not commence this suit to establish the paternity of Justin until June 4, 2015.

## II. STATUTORY SCHEME

A "parent–child relationship" in Texas means the legal relationship between a child and the child's parent as provided under chapter 160 of the family code. *See* Tex. Fam. Code Ann. § 101.025. Once established, this legal relationship confers numerous rights and duties upon a child's parents. *See id.* § 151.001. For example, a child's parent has the right to have physical possession of the child, to direct the child's moral and religious training, to make decisions concerning the child's education, and to designate the residence of the child. *Id.* § 151.001(a)(1), (10). A

3

parent also has the right to represent the child in a legal action and to make other decisions of substantial significance concerning the child. *Id.* § 151.001(a)(7). A child's parent has the right to inherit from and through the child and generally has the right to the services and earnings of the child. *Id.* § 151.001(a)(5), (9). The list goes on. *See id.* § 151.001.

The duties of a parent are similarly vast. A child's parent has the duty of care, control, protection, and reasonable discipline of the child. *Id.* § 151.001(a)(2). A parent has the duty to support the child, a duty that includes providing the child with clothing, food, shelter, medical and dental care, and an education. *Id.* § 151.001(a)(3). A parent also generally has the duty to manage the estate of the child. *Id.* § 151.001(a)(4). And there are more. *See id.* § 151.001.

The parent–child relationship includes the mother–child relationship and the father–child relationship. *See id.* §§ 101.024(a), .025, 160.102(11), .201. Peter desires to establish the latter between himself and Justin, thereby placing in Peter all the rights and duties of a parent as described above. A father–child relationship can be established between a man and a child in the following ways:

> (1) an unrebutted presumption of the man's paternity of the child under Section 160.204;
>
> (2) an effective acknowledgment of paternity by the man under Subchapter D,[] unless the acknowledgment has been rescinded or successfully challenged;
>
> (3) an adjudication of the man's paternity;

4

(4) the adoption of the child by the man; or

(5) the man's consenting to assisted reproduction by his wife under Subchapter H,[] which resulted in the birth of the child.

*Id.* § 160.201(b). The first and third means are in play here. Under the first means, a father–child relationship between a man and a child can be established by presumption under several circumstances, including if the man was married to the child's mother when the child was born. *Id.* § 160.204(a)(1). That is what happened here: Ivan was married to Kelly when she gave birth to Justin. Thus, the law presumes that Ivan is Justin's father. *See id.*

But Peter alleges that he, not Ivan, is Justin's biological father. Nevertheless, section 160.204—the statute prescribing the circumstances under which a man is presumed to be a child's father—does not presume a man to be a child's father merely because the man is the child's biological father.[3] *See id.* § 160.204. And if a presumption arises that a man is a child's father under section 160.204, that presumption is a particularly strong one, even if it so happens that the man is not the child's biological father. The presumption can be rebutted in only two circumstances: (1) when there is a formal adjudication of parentage in a proceeding brought for that purpose or (2) when the presumed father files a valid denial of paternity in conjunction with another person's filing of a valid acknowledgement of paternity. *Id.*

---

[3]Of course, it will often be the case that a man who is presumptively a child's father under section 160.204 will also be the child's biological father, but as this case demonstrates, that is not always so.

5

§ 160.204(b); *In re S.C.L.*, 175 S.W.3d 555, 559 (Tex. App.—Dallas 2005, no pet.). So long as the presumption stays unrebutted, the law deems the presumed father to be the child's father. Tex. Fam. Code Ann. §§ 160.102(13), .201(b)(1); *S.C.L.*, 175 S.W.3d at 557.

With Ivan as Justin's presumed father, then, Peter does not have an existing father–child relationship with Justin under Texas law. *See* Tex. Fam. Code Ann. § 160.201. Instead, based on Peter's allegation that he is Justin's biological father, Peter is an alleged father. *See id.* § 101.0015 (defining "alleged father" to mean "a man who alleges himself to be, or is alleged to be, the genetic father or a possible genetic father of a child, but whose paternity has not been determined"). So Peter filed this suit to adjudicate parentage in order to rebut Ivan's presumed-father status and to establish a father–child relationship with Justin. *See id.* § 160.602(a)(3).

If a child does not have a presumed, acknowledged, or adjudicated father, a person with standing to bring a suit to adjudicate the parentage of the child may file that suit at any time. *See id.* §§ 160.602, .606. But that is not so if the child has a presumed father, as Justin does here. Section 160.607 applies to that situation, and it provides as follows:

> (a) Except as otherwise provided by Subsection (b), a proceeding brought by a presumed father, the mother, or another individual to adjudicate the parentage of a child having a presumed father shall be commenced not later than the fourth anniversary of the date of the birth of the child.

6

(b) A proceeding seeking to adjudicate the parentage of a child having a presumed father may be maintained at any time if the court determines that:

> (1) the presumed father and the mother of the child did not live together or engage in sexual intercourse with each other during the probable time of conception; or

> (2) the presumed father was precluded from commencing a proceeding to adjudicate the parentage of the child before the expiration of the time prescribed by Subsection (a) because of the mistaken belief that he was the child's biological father based on misrepresentations that led him to that conclusion.

*Id.* § 160.607; *see S.C.L.*, 175 S.W.3d at 557.

Thus, with two exceptions (which do not apply here), if a child has a presumed father, a proceeding to adjudicate the child's parentage must be brought no later than the child's fourth birthday.[4]

## III. TRIAL COURT PROCEEDINGS

From the time they filed their initial pleadings in this case, Kelly and Ivan asserted that Peter's suit was barred by section 160.607's four-year statute of limitations. And for the first two years that this case was pending before the trial court, Peter asserted only one basis for avoiding section 160.607's applicability: he claimed that Kelly and Ivan should be barred from asserting section 160.607's time limitation based on the doctrine of equitable estoppel. Peter did not raise a challenge

---

[4]There is also a four-year limitations period in cases when a child has an acknowledged or adjudicated father. In those cases, a person generally may not initiate an adjudication suit more than four years after the effective date of the acknowledgement or adjudication. *See* Tex. Fam. Code Ann. § 160.609.

to section 160.607's constitutionality until he filed his second amended petition to adjudicate parentage on June 5, 2017, two years after he initiated this suit and only two weeks before the scheduled bench trial.[5]  In his live pleading, Peter asserted that section 160.607 is unconstitutional under the Fourteenth Amendment's Equal Protection and Due Process Clauses as well as under Texas constitution article I, section 19's due-course-of-law guarantee.[6]

But Peter did not present the trial court with any arguments related to the constitutional challenges he raised in his live pleading until his closing argument at trial.  Even then, Peter's constitutional argument was meager.  The record shows that Peter's primary focus during trial remained his contention that section 160.607 was inapplicable based on equitable estoppel, and that basis for avoiding section 160.607 dominated his closing argument.  His entire argument related to section 160.607's constitutionality was the following:

> In fact, the Supreme Court of the United States has recently ruled that a court may not treat a married parent differently than a single parent, and because of the minor exceptions in the statute at bar here, it does just that.  So we're asking the Court to find on its face that it's unconstitutional and inapplicable . . . .

---

[5]The parties agreed to a reset of the trial, and Peter amended his pleadings twice more, leaving his fourth amended petition to adjudicate parentage as his live pleading.

[6]With respect to his due-course-of-law challenge, other than quoting article I, section 19, Peter pleaded only that "[u]nder this provision, Petitioner seeks to obtain a judicial determination entitling him to both the rights and obligations of a 'parent.'"

The trial court took the case under advisement and on October 9, 2017, sent a letter informing the parties that it had determined section 160.607 was constitutional.

On December 18, 2017, before the trial court signed a final order, Peter filed a motion asking it to reconsider its determination that section 160.607 was constitutional. In that motion, Peter, relying on cases from the United States Supreme Court, argued that the trial court had to subject section 160.607 to strict scrutiny because it infringed upon a fundamental right and created a suspect classification.[7] And he argued that section 160.607 was unconstitutional because it could not survive such scrutiny.

The trial court held a hearing on Peter's motion. Echoing the arguments in his motion, Peter maintained that section 160.607 was unconstitutional because it infringed on "a biological parent's rights to their own child," which the "Supreme Court ha[d] held [to be] a fundamental constitutional right." He also argued that

---

[7]While Peter did cite to four Texas cases, he did so to support his contention that section 160.607 infringed on a fundamental right. And none of the four Texas cases he cited involved constitutional challenges to a statute, whether under the federal or state constitutions. *See generally Holick v. Smith*, 685 S.W.2d 18, 21 (Tex. 1985) (holding evidence legally insufficient to support trial court's order terminating mother's parental rights under termination statute); *In re G.M.*, 596 S.W.2d 846, 847 (Tex. 1980) (holding that parental terminations must be based on clear and convincing evidence); *Wiley v. Spratlan*, 543 S.W.2d 349, 352 (Tex. 1976) (holding evidence legally insufficient to support trial court's order terminating mother's parental rights under termination statute); *Gunn v. Cavanaugh*, 391 S.W.2d 723, 724, 726–27 (Tex. 1965) (holding that father—whose parental rights were terminated despite the fact he was never served—had a remedy, but the remedy was by bill of review rather than by writ of error).

section 160.607 created a suspect class because it differentiated between "a married man and an unmarried man." He elaborated, stating that under the family code, "[a] biological parent can file a paternity suit at any point that they determine that they may be the father of the child, except if [the] mother was married at the time the child was born," and thus, section 160.607 results in treating two classes of people differently.

Peter further argued that because section 160.607 infringed on a fundamental right and created a suspect class, the trial court had to apply strict scrutiny and that "statutes that are subject to strict scrutiny are almost always struck down as unconstitutional." Peter asserted that there was "no important governmental interest" in denying his ability to establish parentage more than four years after Justin's birth. Peter asked the trial court to "review the cited Supreme Court cases that [he had] previously provided, and to apply the strict scrutiny application and find that the statute that barred [him] from bringing this suit more than four years after the birth of the child is unconstitutional."

Following the hearing on Peter's motion to reconsider, the trial court denied the motion and signed an order denying his petition to adjudicate parentage. Upon Peter's request, the trial court filed findings of fact and conclusions of law. The trial court made two conclusions of law that are relevant here. First, the trial court concluded that Peter had failed to file his suit to adjudicate parentage within the

limitations period provided in section 160.607. And second, it concluded that section 160.607 is constitutional.

## IV. DISCUSSION

In his sole issue, Peter challenges the trial court's conclusion that section 160.607 is constitutional, arguing that it violates both the state and federal constitutions. But the arguments in his brief supporting that assertion are difficult to discern. Peter makes references in his brief to the due-course-of-law guarantee in article I, section 19 of the Texas constitution. *See* Tex. Const. art. I, § 19. He also references the Fourteenth Amendment's Equal Protection Clause. *See* U.S. Const. amend. XIV, § 1. Peter additionally makes a passing reference to "his constitutional right to . . . equal protection" guaranteed in the Texas constitution.[8]

### A. STANDARD OF REVIEW

The trial court's determination that section 160.607 is constitutional is a legal conclusion that we review de novo. *See Lund v. Giauque*, 416 S.W.3d 122, 126 (Tex.

---

[8]Peter appears to argue that section 160.607 violates his constitutional right to equal protection "as guaranteed in Texas [c]onstitution, article I, section 19." While the Texas constitution has an equal-protection provision that is similar to the Equal Protection Clause in the federal Constitution's Fourteenth Amendment, that provision does not appear in article I, section 19 but is instead found in article I, section 3. *Compare* Tex. Const. art. I, § 3, *with* Tex. Const. art. I, § 19. *See generally Gatesco Q.M. Ltd. v. City of Houston*, 503 S.W.3d 607, 621 (Tex. App.—Houston [14th Dist.] 2016, no pet.) ("The legal standard for the equal-protection analysis under article I, section 3 of the Texas [c]onstitution is the same as the legal standard for the analysis under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution."). Peter did not cite to article I, section 3 in his brief.

11

App.—Fort Worth 2013, no pet.). We begin with a strong presumption that section 160.607 is constitutional. *See* Tex. Gov't Code Ann. § 311.021(1); *Whitworth v. Bynum*, 699 S.W.2d 194, 196–97 (Tex. 1985); *Sanders v. Palunsky*, 36 S.W.3d 222, 224 (Tex. App.—Houston [14th Dist.] 2001, no pet.). And as the party making a constitutional challenge, Peter has the burden to establish section 160.607's unconstitutionality. *See Lund*, 416 S.W.3d at 126–27.

## B. PETER DID NOT PRESERVE HIS CONSTITUTIONAL COMPLAINTS BASED ON THE TEXAS CONSTITUTION

To preserve a complaint for appellate review, a party must present to the trial court a timely request, objection, or motion that states the specific grounds for the desired ruling, if not apparent from the request's, objection's, or motion's context. *See* Tex. R. App. P. 33.1(a)(1)(A). If a party fails to do this, error is not preserved. *Bushell v. Dean*, 803 S.W.2d 711, 712 (Tex. 1991) (op. on reh'g). Additionally, the complaint a party raises on appeal must match the complaint the party presented to the trial court. *See Banda v. Garcia*, 955 S.W.2d 270, 272 (Tex. 1997). These error-preservation rules apply to constitutional challenges. *See Dreyer v. Greene*, 871 S.W.2d 697, 698 (Tex. 1993) ("As a rule, a claim, including a constitutional claim, must have been asserted in the trial court in order to be raised on appeal."); *Miles v. Jerry Kidd Oil Co.*, 363 S.W.3d 823, 828–29 (Tex. App.—Tyler 2012, no pet.). As outlined above, Peter included in his live pleading a conclusory allegation that section 160.607 violates the due-course-of-law guaranteed under article I, section 19 of the Texas constitution, but he never

12

presented the trial court with any specific arguments related to that contention. And he neither pleaded nor argued that section 160.607 violates the Texas constitution's equal-protection guarantee. Thus, Peter failed to preserve his complaints based on the Texas constitution's due-course-of-law and equal-protection guarantees. *See Miles*, 363 S.W.3d at 828–29 (holding that appellant failed to preserve equal-protection and due-course-of-law complaints based on the Texas constitution because he did not raise them in the trial court).

## C. PETER'S EQUAL-PROTECTION CHALLENGE TO SECTION 160.607 FAILS

In his brief, as he did in the trial court, Peter contends that section 160.607 violates the Equal Protection Clause because it is required to, but cannot, survive strict-scrutiny review. He argues that strict scrutiny is the appropriate standard because section 160.607 infringes on a fundamental right and creates a suspect classification. Peter did not argue in the trial court, and does not argue on appeal, that section 160.607 violates the Equal Protection Clause under a constitutional standard that is more deferential than strict scrutiny, such as rational basis.

### 1. Applicable Law

The Equal Protection Clause is "essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). This clause "does not require that all persons be dealt with identically, but it does require that a distinction made have some relevance to the purpose for which the classification is made." *Baxstrom v. Herold*, 383 U.S. 107, 111 (1966). When

13

analyzing a claim that a statute violates the Equal Protection Clause, the level of scrutiny we apply depends upon the nature of the rights affected. *Mauldin v. Tex. State Bd. of Plumbing Exam'rs*, 94 S.W.3d 867, 871 (Tex. App.—Austin 2002, no pet.). If the statute implicates a fundamental right or a suspect class, then we apply strict scrutiny, under which the statute will be upheld only if it is narrowly tailored to further a compelling government interest.[9] *Mauldin*, 94 S.W.3d at 871, 873; *see City of Cleburne*, 473 U.S. at 440; *Wood v. Collier*, 836 F.3d 534, 538–39 (5th Cir. 2016). Otherwise, we apply rational basis, under which the challenged statute will be upheld if it rationally furthers a legitimate government interest. *Mauldin*, 94 S.W.3d at 871; *see City of Cleburne*, 473 U.S. at 440; *Wood*, 836 F.3d at 539.

## 2. Fundamental Right

We consider first Peter's contention that strict scrutiny applies here because section 160.607 infringes upon a fundamental right.

In the context of analyzing whether a statute burdens a fundamental right under the Equal Protection Clause, fundamental rights are those that are, "objectively, deeply rooted in this Nation's history and tradition" and "implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were

---

[9]Strict scrutiny is a demanding standard. *Mance v. Sessions*, 896 F.3d 699, 705 (5th Cir. 2018). The Supreme Court of the United States has stated that although strict scrutiny does not always result in a statute being struck down such that the standard is "strict in theory, but fatal in fact," *see Adarand Constructors, Inc. v. Pena*, 515 U.S. 200, 237 (1995), nevertheless, it is rare that a statute will survive strict scrutiny, *see Burson v. Freeman*, 504 U.S. 191, 211 (1992).

14

sacrificed." *Washington v. Glucksberg*, 521 U.S. 702, 720–21 (1997) (citations and internal quotation marks omitted).[10] Analyzing whether an asserted right is fundamental first requires a careful description of the asserted right. *Morrissey*, 871 F.3d at 1269; *see Glucksberg*, 521 U.S. at 721; *Schlittler v. State*, 488 S.W.3d 306, 313–14 (Tex. Crim. App. 2016).

We note that the fundamental right Peter claims section 160.607 infringes is far from carefully articulated. Peter appears to contend that because he is Justin's biological father, he has a fundamental right to establish a parent–child relationship with Justin even though Justin has a presumed father, and Peter claims section 160.607 denies him that right because it bars him from seeking to establish that relationship. But it is imprecise to say that section 160.607 bars Peter from seeking to establish a parent–child relationship with Justin because that provision does no such thing. To the contrary, even though Justin has a presumed father, TUPA as a whole provides, and the provisions of section 160.607 presuppose, that Peter has standing as

___

[10]Although *Glucksberg* involved whether an asserted right was "fundamental" under the Fourteenth Amendment's Due Process Clause rather than its Equal Protection Clause, the test for determining whether an asserted right is a fundamental right that triggers strict scrutiny is the same under both of those Clauses. *See Scally v. Tex. State Bd. of Med. Exam'rs*, 351 S.W.3d 434, 448 n.18 (Tex. App.—Austin 2011, pet. denied) (citing *Glucksberg* test as the test for determining whether an asserted right was a fundamental right for purposes of analyzing the appellant's challenge under the Equal Protection Clause); *see also Morrissey v. United States*, 871 F.3d 1260, 1269 & n.7 (11th Cir. 2017) (looking to cases that analyzed whether asserted rights were fundamental under the Due Process Clause in order to determine whether appellant's asserted right was fundamental under the Equal Protection Clause).

Justin's alleged father to bring a suit to adjudicate parentage. *See* Tex. Fam. Code Ann. § 160.602(a)(3) (generally conferring standing to file a proceeding to adjudicate parentage on "a man whose paternity of the child is to be adjudicated"), § .607(a) (providing that even when a child has a presumed father, a person with standing may bring an adjudication suit, so long as he does so by the child's fourth birthday); *see also In re Sullivan*, 157 S.W.3d 911, 919 (Tex. App.—Houston [14th Dist.] 2005, orig. proceeding) (noting that at a minimum, section 160.602(a)(3) confers standing on an alleged father to prosecute an adjudication suit).

What section 160.607 actually bars Peter from doing is initiating an adjudication suit to establish a parent–child relationship with Justin after his fourth birthday because Justin has a presumed father. *See* Tex. Fam. Code Ann. § 160.607(a). Thus, a careful description of the right Peter argues is fundamental is the right of an alleged father to commence a paternity suit for the purpose of establishing a parent–child relationship with a child who has a presumed father after the child's fourth birthday. Having carefully described the asserted fundamental right, we must consider whether it is, "objectively, deeply rooted in this Nation's history and tradition" and "implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if [it] were sacrificed." *Glucksberg*, 521 U.S. at 720–21; *see Morrissey*, 871 F.3d at 1269. We conclude the answer is no.

We find the United States Supreme Court's decision in *Michael H. v. Gerald D.* instructive to the historical inquiry here. *See* 491 U.S. 110 (1989). There, as here, the

16

husband's wife engaged in an adulterous affair that resulted in a child's being conceived. *See id.* at 113–14. But the husband and wife remained married, and the child who was conceived during the wife's affair was subsequently born during the marriage. *See id.* As a result, state law presumed the husband to be the child's father. *See id.* at 117–18. The child's biological father eventually filed a lawsuit seeking to rebut that presumption and to establish paternity. *See id.* at 114. But under state law, the biological father had no standing to bring such a suit, only the husband or wife did. *See id.* at 115, 117–18. So the biological father lost on summary judgment, and his case found its way to the United States Supreme Court, which addressed the biological father's contention that the statutory scheme prohibiting him from rebutting the presumption that the husband was the child's father and from establishing his own paternity deprived him of substantive due-process rights under the Fourteenth Amendment. *See id.* at 115–16.

After conducting a historical inquiry, a plurality of the Court concluded that our society did not have a traditional practice either of conferring standing to a biological father to assert paternity to a child born during the mother's marriage to another man or of according the biological father substantive parental rights in that circumstance. *See id.* at 124–27 (explaining that nothing in the older sources or older cases specifically addressed "the power of the natural father to assert parental rights over a child born into a woman's existing marriage with another man" and that nothing in the caselaw showed that the states "in fact award[ed] substantive parental

17

rights to the natural father of a child conceived within, and born into, an extant marital union that wishe[d] to embrace the child"). The plurality thus concluded that the state statutory scheme that prohibited the biological father from establishing paternity did not infringe upon any fundamental right protected by the Fourteenth Amendment. *Id.* at 127. In the plurality's view, it was "a question of legislative policy and not constitutional law whether [the state would] allow the presumed parenthood of a couple desiring to retain a child conceived within and born into their marriage to be rebutted." *Id.* at 129–30.

The facts of this case are strikingly similar to those present in *Michael H.*, though the statutory scheme that Peter challenges in this case does differ from that at issue in *Michael H.* In *Michael H.*, the challenged statutory scheme completely barred the biological father from challenging the paternity of a child born into a woman's existing marriage and thus denied him any ability to establish parental rights. *See id.* at 115, 117–18. But the statutory scheme that Peter challenges in this case is much more favorable to him than the one at issue in *Michael H.* was to the biological father there. As noted above, TUPA affords a person in Peter's shoes the ability to bring a suit to adjudicate parentage so long as he initiates that proceeding by the child's fourth birthday. If, as the plurality concluded in *Michael H.* under facts similar to those here, a statutory scheme that barred the biological father from bringing a suit to adjudicate parentage at any time did not infringe on his fundamental rights under the Fourteenth Amendment, we cannot see how a statutory scheme that allows the biological father

18

to file such a suit by the child's fourth birthday would. *Cf. S.C.L.*, 175 S.W.3d at 558 (holding that section 160.607's four-year period of limitations to commence adjudication suit did not violate biological father's due-process rights under the Fourteenth Amendment). Accordingly, we hold that Peter has not established that the Fourteenth Amendment affords him a fundamental right to commence a suit to adjudicate parentage after Justin's fourth birthday.

Having concluded that Peter failed to show that section 160.607 burdens a fundamental right, we now consider whether it implicates a suspect class. *See Mauldin*, 94 S.W.3d at 871, 873; *see also City of Cleburne*, 473 U.S. at 440; *Wood*, 836 F.3d at 539.

### 3. Suspect Class

While it is clear that Peter means to argue that section 160.607 burdens a suspect class, it is not at all clear what he believes that suspect class to be. He broadly asserts that "laws that treat people differently cannot stand without meeting the heightened scrutiny standard." But that is not so. A statute is subjected to strict scrutiny under the Equal Protection Clause only if it implicates a fundamental right or a suspect class. *Mauldin*, 94 S.W.3d at 871, 873; *see City of Cleburne*, 473 U.S. at 440; *Wood*, 836 F.3d at 539. A suspect class is one that has been "saddled with such disabilities, or subjected to such a history of purposeful unequal treatment, or relegated to such a position of political powerlessness as to command extraordinary protection from the majoritarian political process." *Mass. Bd. of Ret. v. Murgia*, 427 U.S. 307, 313 (1976) (quoting *San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1,

19

28 (1973)); *accord In re H.Y.*, 512 S.W.3d 467, 475–76 (Tex. App.—Houston [1st Dist.] 2016, pet denied). Examples of suspect classes are those based upon gender, race, alienage, and national origin. *See Sonnier v. Quarterman*, 476 F.3d 349, 368 n.17 (5th Cir. 2007); *Mauldin*, 94 S.W.3d at 871 (citing *Frontiero v. Richardson*, 411 U.S. 677, 688 (1973)).

Peter does not assert that section 160.607 creates a class based on any of the characteristics that courts have historically held to be suspect. Instead, Peter appears to contend that section 160.607 creates a suspect class merely because it treats an alleged father differently from a presumed father. But assuming that section 160.607 draws such a distinction, Peter offers neither authority nor explanation as to how that distinction creates a suspect class that triggers strict scrutiny. Because strict scrutiny "requires an exacting investigation of legislative choices, the Supreme Court has made clear that 'respect for the separation of powers' should make courts reluctant to establish new suspect classes." *Thomasson v. Perry*, 80 F.3d 915, 928 (4th Cir. 1996) (quoting *City of Cleburne*, 473 U.S. at 441). We cannot conclude that section 160.607 burdens a suspect class based on nothing more than Peter's broad and bare assertions that section 160.607 treats him differently than it does a presumed father. Accordingly, we hold that Peter has failed to show that section 160.607 burdens a suspect class.

20

#### 4. Strict Scrutiny Does Not Apply

We have concluded that section 160.607 does not implicate a fundamental right or a suspect class. Accordingly, strict scrutiny does not apply. *See Mauldin*, 94 S.W.3d at 871; *see also City of Cleburne*, 473 U.S. at 440; *Wood*, 836 F.3d at 539. Both in this court and in the trial court, the only basis Peter presented for holding section 160.607 unconstitutional was that it had to, but could not, withstand strict-scrutiny review. Peter has not asserted that section 160.607 is unconstitutional even under a less rigorous standard, such as rational basis. Thus, our conclusion that strict scrutiny is not the applicable standard to apply in reviewing section 160.607's constitutionality is dispositive of Peter's sole issue. *See* Tex. R. App. P. 47.1; *Ramirez v. State*, 557 S.W.3d 717, 721–22 (Tex. App.—Corpus Christi–Edinburg 2018, pet. ref'd) (concluding that court's holding that challenged statute was not subject to strict-scrutiny review was dispositive of the appellant's constitutional challenge when the appellant's only argument for striking down the statute was that the statute could not withstand strict-scrutiny review). Accordingly, we overrule Peter's sole issue.

### V. CONCLUSION

Having overruled Peter's sole issue, we affirm the trial court's judgment. *See* Tex. R. App. P. 43.2(a).

/s/ Lee Gabriel
Lee Gabriel
Justice

Delivered: August 27, 2019

21